All the Justices concurring.

---

ST. JOSEPH & DENVER CITY RLD. CO. v. CHARLES T. CALLENDER.

1. RIGHT OF WAY FOR RAILROAD; *When Appropriated.* Full compensation must be first made in money, or secured by a deposit of money, before any right of way can be appropriated to the use of a corporation.

2. —————— *Appeal; Judgment.* This imperative rule of the constitution is not relaxed by the fact that the land-owner has appealed from the assessment of his damages by the commissioners, nor by the fact that on such appeal he has recovered a judgment for the amount thereof.

3. ———— *No Right to Land, nor Possession, until Payment.* Where such judgment for damages is not paid, and it appears that pending the appeal the railroad company entered upon his land and constructed its road, and it does not appear that the land-owner had any actual knowledge of such entry and occupation, or in any manner consented thereto, a judgment in favor of the land-owner, in an action of ejectment for the recovery of possession, will not be reversed.

## *Error from Washington District Court.*

EJECTMENT, brought by *Callender*, to recover possession of certain lands occupied by the *Railroad Company*, and claimed by said company as its right of way under condemnation proceedings. The facts, and the proceedings in the court below, are fully stated in the opinion. *Callender* had judgment for the possession of the land, at the December Term 1873 of the district court, and the *Railroad Company* brings the case here on error.

*Doniphan & Reid,* and *J. D. Brumbaugh,* for plaintiff in error:

1. The proceedings to condemn were commenced under §§ 10 and 11 of the charter of the company, (acts of 1857, p. 196,) which have been fully complied with. The defendant upon his appeal obtained a judgment for a large sum of money, and cannot now be permitted to go back and eject the party, and then collect his judgment at law. There is no testimony to show the judgment is not good.

2. The owner having stood by for nearly two years, and permitted the expenditure of large sums of money in improving the property, will not be permitted to reclaim the property. (18 Ohio St., 169.) The defendant in error had taken his option to obtain compensation by appeal, and acquiesced in the occupation of the land.

3. The district court seems to have ruled for defendant in error, simply because plaintiff in error filed no bond under § 2, page 156, Laws of 1870, after the appeal was taken January 15th, 1872. We claim that under our charter we could not be compelled to file any bond, and that the provision regarding a bond was merely intended to aid the road to be

32—13 KAS.

built, and not to delay the work by injunction or dilatory proceedings, and it was optional with the company to file such bond in case either an action of injunction or ejectment was commenced against it, while the road was building. Here, as shown by the pleadings, the road was completed and running over the land long before the appeal was taken.

4. The plaintiff in error is operating a railroad over the land in controversy, and it has thereby become a public highway. *Olcutt v. Supervisors*, 16 Wall., 678. It would be against public policy to prevent carrying passengers and mails over the road.

5. All the right the railroad could get would be an easement; *Kellogg v. Malin*, 50 Mo., 498; and ejectment will not lie for an easement; Washb. on Eas. & Serv., 663, 660; 37 Barb., 244; 25 Barb., 54.

6. The essentials of ejectment to entitle a plaintiff to recover, were, at common law, title, lease, entry, and ouster. We have no lease, but title. Entry and disseisin are still necessary; Adams on Eject., 18. Disseisin is the turning-out; Tyler on Ejectment, 79. The right to a fee and easement can exist in the same estate. Each can sue to vindicate its rights, one to enforce its seisin, and the other to prevent disturbance of easement; Washb. on Eas. & Serv., 660. The easement is not affected by a judgment in favor of a stranger against the owner of the separate estate, in ejectment. Washb. E. & S., 660; 5 Met., 446; 3 Green, N.J., 371. Where the legislature authorizes an act to be done the courts will not hold it a trespass if the law has been pursued; 1 Am. Railway Cases, 166, 167.

7. A party may renounce his constitutional rights, and waive his claim; 38 N. Y., 274; 6 Hill, 47. The proper and only remedy on the part of defendant in error is, to enjoin the use of the property when the suit in the district court upon the appeal is finally determined; 30 Iowa, 327. It seems from the authorities in reference to ejectment against railroad companies, that the action cannot be maintained after the land-owner has permitted the road to be built and oper-

ated for the benefit of the public. The judgment in favor of the defendant in error in the district court is still in force, and binding upon plaintiff in error.

*J. W. Rector,* and *W. D. Webb,* for defendant in error:

"No right of way shall be appropriated to the use of any corporation until full compensation therefor be first made in money, or secured by a deposit of money, to the owner." Const. of Kansas, art. 12, § 4; 16 N. Y., 97; 13 Minn., 315; 7 Md., 500; 16 Minn., 260; Sedg. Const. Law., 526. The plaintiff in error should have deposited the amount of the judgment in the court below, at least; but a bond should have been executed to defendant in error immediately upon the taking of the appeal, and only upon the execution of such bond could the railroad company hold possession or use the land. (Laws of 1870, ch. 74, pp. 155, 156.) This not having been done, either injunction or ejectment will lie. 2 Dillon Ct. Ct. Rep., 376; 10 Iowa, 540; 18 Iowa, 259; 2 Hill, 269; 66 Penn. St., 404; 6 Wis., 605; 12 id., 213; 20 id., 135.

The opinion of the court was delivered by

BREWER, J.: The facts in this case are briefly as follows: In June 1871 the plaintiff in error commenced proceedings to condemn the right of way through lands of defendant in error, situate in the county of Washington. Commissioners were duly appointed, who assessed the damages at $66.10. This amount was deposited with the county treasurer. All the proceedings were regular, and conformed to the statute. Dissatisfied with the award of the commissioners, Callender appealed to the district court, and in August 1872, obtained a verdict and judgment for $1,200. Notwithstanding the appeal the Railroad Company entered upon Callender's land, constructed its road-track, etc., is now using it for the running of its trains. Upon the taking of this appeal by Callender no bond was filed by the company as required by § 1 of ch. 74 of laws of 1870; and no other

money has ever been paid or deposited than the $66.10 awarded by the commissioners. The judgment of the district court remains unsatisfied. In March 1873 Callender commenced an action of ejectment to recover the possession of the land taken by the company. The district court rendered judgment in his favor, and of this judgment plaintiff in error complains.

Upon the facts above stated, was Callender entitled to recover? The constitution, article 12, § 4, provides that " no *1. Right of way for railroad. When appropriated.* right of way shall be appropriated to the use of any corporation until full compensation therefor be *first* made in money, or secured by a deposit of money to the owner." The amount of compensation to which Callender was entitled has been finally determined to be $1,200. This has not been paid or secured by a deposit of money. The right of way has not therefore been appropriated to the company, and Callender is still the owner and entitled to the possession. As against this it is insisted that Callender has *2. Appeal by landowner; judgment.* obtained and still holds a judgment for the damages, and that if permitted to recover in this action he will have both the land and judgment for damages for its appropriation; that he stood by for nearly two years and permitted the company to occupy and expend large sums of money in improving this land, and therefore it is too late for him now to question its right to occupy ; that he elected to pursue his remedy for damages, and must abide by that election. So far as regards the first part of this objection, it is enough to say that the recovery of possession would operate as a satisfaction of the judgment for damages, and any attempt thereafter to enforce its collection would be restrained, and satisfaction ordered to be entered of record. Nor could the plaintiff assign his judgment so as to subject the company to double loss. Either his assignment would be so far a guaranty to the assignee of an irrevocable right to enforce the collection of the judgment as to estop him from disturbing the company's possession, or else the assignee would take the judgment subject to the risk of having it satisfied by the

assignor's recovery of possession. This judgment is simply the final determination, in the manner pointed out by the statute, of the amount to be paid for the right of way. By *payment* the right of way passes to the company. Without it nothing passes.

In regard to the latter part of the objection, it may be remarked that the record shows no formal assent to, nor even any actual knowledge of, the occupation by the company. The evidence is not preserved, and we have simply the pleadings, findings, and judgment. True, the court finds that Callender was the owner, and in possession prior to the entry by the company; but this may mean that constructive possession that follows title; or it may mean possession by tenant. It does not necessarily import actual occupation, or actual knowledge of the company's entry and improvement. Now, a party ignorant of another's entry upon his land, and expenditure of money and labor in improvements thereon, can hardly be said to have so acquiesced in such entry and improvement as to be estopped from thereafter setting up his own rights to the land. But conceding that possession, as stated in the findings, means actual occupation, and implies actual knowledge, and still we think the doctrine of estoppel will not help the plaintiff in error. Both the company and the

3. Actual payment necessary to secure right to land, or possession.

land-owner act with knowledge that the right of way cannot be appropriated until full compensation therefor has been first made in money, or secured by deposit of money. Of course, this deposit must be such as *secures full* compensation. A deposit of $66.10 does not secure full compensation for $1,200 damages. The company initiates the proceedings, and summons the land-owner before a tribunal for the assessment of his damages. All the proceedings are in conformity to law, and the assessment is made — an assessment in this case, as appears from the verdict of the jury, grossly inadequate to the actual damages sustained. All that the land-owner can now litigate, so far as these condemnation proceedings are concerned, is the amount of damages. There is no secret defect in those pro-

ceedings which he is now for the first time springing upon the company, ignorant of its existence. He concedes that all is regular; he initiates no new proceedings; but simply pursues those already initiated by the company. If he does not appeal, the company acquire the right of way, and he must be content with the award of the commissioners. Hence it seems hardly fair to say that he elected to pursue a mere claim for damages, and waived all his rights to the land. By his appeal, however, he gives notice to the company, that the amount awarded is not full compensation, and that more must be paid before any right of way is appropriated. If after this notice, and without his consent, the the company sends its workmen onto his land, and builds its road, what room is there for the application of the doctrine of estoppel? There is no misrepresentation, no concealment on the part of the land-owner. The company acts with full knowledge of his rights and claims, and its own obligations. It was a trespasser *ab initio*, and ought rather to atone for the trespass than to attempt to make that trespass a means of wresting the land-owner's property from him without compensation. The case of *Dater v. The Troy T. & Rld. Co.*, 2 Hill, 629, is strongly in point. There the act incorporating the company authorized it to condemn the right of way, provided for the appointment of commissioners, and the assessment of damages, and declared that if upon the making of such assessment the amount thereof was deposited to the credit of the land-owner, and notice thereof given to him, the company should then become seized of the land in fee simple. It also authorized an appeal from the assessment of the commissioners to the chancellor. Commissioners were appointed, the assessment made, the amount deposited, and notice given, all in conformity to the statute. The company then entered and took possession of the land. Dater appealed, and on the appeal a larger amount was awarded him. This amount not being paid he brought ejectment, and the action was sustained. See also *Loop v. Chamberlain*, 20 Wis., 135; *Henry v. The D. & P. Rld. Co.*, 10 Iowa, 540; *Richards v.*

*Des Moines V. Rld. Co.*, 18 Iowa, 259; *McClinton v. P., Ft. W. & C. Rly. Co.*, 66 Penn. St., 464. We are aware of decisions seemingly adverse to the views here expressed. Among them are *McAulay v. The W. V. Rld. Co.*, 33 Vt., 311; *Goodin v. C. & W. Canal Co.*, 18 Ohio St., 169, and a late case, *Provost v. C. R. I. & P. Rld. Co.*, decided by the supreme court of Mo., and reported in 1 Central Law Journal, 509. Yet these cases are not exactly parallel with this. In the opinion in each of those cases, stress is laid on the fact that the land-owner had full knowledge of the acts of the company in entering upon his land and constructing the road. In the first case the occupation had been continued some eight years before the action was brought. The land-owner had prior to any occupation by the company signed an agreement to take stock of the company in payment of his damages, (an agreement which he subsequently seemed anxious to avoid,) in reference to which the court says: "He does not seem to have insisted that the first appraisal should be deposited during the pendency of the appeal, and before the work proceeded further. His great desire seems to have been, that the damages should be agreed upon, and that he should be released from all claim under the written agreement to accept stock. To this extent his remonstrances were loud and sufficiently intelligible. It appeared also that after the damages had been finally ascertained the stock therefor was duly tendered and refused." It would seem a reasonable inference from the facts as stated in that case, that the land-owner had waived his right to insist upon prepayment. In the second case the plaintiffs were stockholders in a canal company. A railroad company desired the bed of the canal for its railway track, and the canal company being much embarrassed, the president of the railroad company bought up a majority of stock at very low rates, put in a new board of directors in the interest of the railroad company, and then the directory of the two companies, by agreement, and without referring the matter to any commissioners or jury, fixed the damages to be paid to the canal company at a

grossly inadequate sum.   The railroad company took pos-
session of the canal, constructed its road, and was in full
possession, operating its trains, etc., when the plaintiffs brought
their action, asking that the pretended sale or condemnation be
set aside, and the railroad company be enjoined from further
use of the canal-bed.   The supreme court, conceding the in-
validity of the sale, held that the plaintiffs were too late to
obtain relief by injunction, though they might proceed to ob-
tain full compensation.   Quoting from a prior opinion, the
court says: "Before a stockholder can be entitled to a remedy
by injunction against such departure from the original objects
of the incorporation, he must have shown himself prompt and
vigilant in the assertion of his rights as such stockholder.   It
will not do for him to wait until the mischief of which he
complains is accomplished, fortunes expended, and great pub-
lic interests created.   If he does, he must be held to have
acquiesced in the change, or to content himself with some
other form of remedy."   *Prima facia*, the transfer of the canal-
bed was valid.   The regular officers of the canal company
had executed the proper conveyances.   Upon the faith of this
apparently valid transaction improvements had been made,
and large sums of money expended.   The invalidity of the
transfer grew out of the bad faith of the officers of the canal
company.   If the stockholders did not interfere at the first
possible moment to prevent the wrong attempted by their
officers, and to prevent innocent parties from expending
money on the faith thereof, it might well be that equity would
refuse to interfere further than to secure them adequate com-
pensation.   The case from Missouri is more nearly parallel.
Indeed, the only important difference is, that in that case it
appears that the land-owner was present all the time, and had
full knowledge of the company's operations in entering upon
and constructing its road-bed over his land.   His failure to
object to this was held a waiver of his right to recover pos-
session, though it was said that "a court of equity would
unquestionably interfere, if necessary, and place the road in
the hands of receivers until the damages were paid from the

earnings." It may be remarked, in reference to each of these cases, that the constitutions of those states have no such stringent imperative provision as is found in ours. At any rate, we cannot assent to the doctrine that, while litigating, in a proceeding which the company has instituted, the amount of damages to which he is entitled from the appropriation of his land to its use, the land-owner must also resist by force or judicial proceedings the entry upon his land, or lose the plain remedy which ordinarily accrues when another party is found in wrongful possession thereof.

The judgment of the district court will be affirmed.

All the Justices concurring.