URBAN RENEWAL AGENCY OF the CITY OF SAN ANTONIO, Appellant,

v.

Angelina ABDO et al. and Joseph Abdo et al., Appellees.

No. 15814.

Court of Civil Appeals of Texas, San Antonio.

Jan. 27, 1978.

Supplemental Opinion Feb. 22, 1978.

Rehearing Denied March 22, 1978.

Phillip D. Hardberger, Josephine M. Hall, Hardberger, Branton & Herrera, Inc., San Antonio, for appellant.

Arthur C. Troilo, Jr., Sawtelle, Goode, Davidson & Troilo, Richard J. Karam, San Antonio, for appellees.

KLINGEMAN, Justice.

This is a condemnation case instituted by the Urban Renewal Agency of the City of San Antonio, appellant herein, to acquire two separate parcels of property owned by several members of the Abdo family, appellees herein. One of the tracts involved is designated as Parcel No. 471 and is located in the 800 block of West Commerce in San Antonio; the other tract is designated as Parcel No. 462 and is partially in the same block of West Commerce and also on Leona Street. The property involved is chiefly rent property, including a barber shop, lounge, portrait shop, sewing machine shop, cafe, and three hotels. Both buildings are three story structures built over fifty years ago. Suit was brought separately as to the two tracts, and after a hearing before the Special Commissioners and entry of an award, appellant deposited the amount of such awards in the registry of the court, to-wit: (a) $124,000.00 as to Parcel No. 462 and (b) $42,500.00 as to Parcel No. 471.

Appellant then obtained a court order for a writ of possession pursuant to which it took possession of the property on December 17, 1975. Both appellant and appellees timely filed objections to the awards of the Special Commissioners. The two cases were then consolidated. In answer to the two special issues submitted the jury found (1) the value of the property known as Parcel No. 462, on December 17, 1975, was $250,000.00; (2) the value of the property known as Parcel No. 471, on December 17, 1975, was $100,000.00.

Appellant then filed (a) motion to dismiss the condemnation proceedings; (b) motion to withdraw amount of Special Commission-

ers' awards; (c) motion for judgment n. o. v.; (d) motion to dismiss and refile condemnation suit. Appellees filed a motion for judgment and a motion to withdraw the deposit. Judgment was entered by the trial court that appellant recover the property involved from the appellees, and that appellant pay to appellees the difference between the amount awarded by the Special Commissioners and the amount found to be the value of the property in the condemnation proceedings by the jury. The trial court also entered an order allowing withdrawal of the funds by appellees. The court overruled appellant's (a) motion for withdrawal of deposit, (b) motion for judgment n. o. v., (c) motion to dismiss, (d) motion to dismiss and refile, and (e) motion for new trial.

Appellant will sometimes be referred to herein as "Urban Renewal Agency" and appellees will be sometimes referred to herein as "the Abdos."

Appellant's first two points of error assert that the trial court erred in failing to grant its motion to dismiss because (1) there is no evidence that appellees cannot be restored to full possession; and (2) there is no evidence that appellees would be prejudiced by the dismissal.

It is settled that in some circumstances the condemning authority has the right to dismiss the condemnation proceedings even after a jury has returned the verdict, but before the court has entered its judgment. *Brazos River Conservation & Reclamation Dist. v. Allen,* 141 Tex. 208, 171 S.W.2d 842 (1943); *Day v. Wooten,* 545 S.W.2d 16 (Tex. Civ.App.—Dallas 1976, writ ref'd n. r. e.); *City of Wichita Falls v. Gleghorn,* 531 S.W.2d 879 (Tex.Civ.App.—Eastland 1975), *writ ref'd n. r. e., per curiam,* 545 S.W.2d 446 (Tex.1976); *City of Rockwall v. Mitchell,* 497 S.W.2d 378 (Tex.Civ.App.—Waco 1973, writ ref'd n. r. e.); *Huntsville Ind. School Dist. v. Scott,* 483 S.W.2d 344 (Tex. Civ.App.—Houston [14th Dist.]) *writ ref'd n. r. e., per curiam,* 487 S.W.2d 692 (Tex. 1972); Art. 3265, Tex.Rev.Civ.Stat.Ann. (Supp.1977). *In the City of Rockwall v. Mitchell, supra,* the Court announced the rule as follows:

The Rule is (and was prior to the enactment of Section 6, Article 3265 in 1969)

that a condemnor may elect to dismiss its condemnation proceedings at any time prior to judgment in the suit, provided there has been no taking of possession of the involved property under an order in a condemnation proceeding or under an agreement with the condemnee pending the proceedings. *City of Houston v. Biggers,* Tex.Civ.App., NRE, 380 S.W.2d 700; *Leonard v. Small,* Tex.Civ.App., Er.Ref., 28 S.W.2d 826; *Brazos River Conservation & Reclamation Dist. v. Allen,* 141 Tex. 208, 171 S.W.2d 842; *Huntsville Ind. Sch. Dist. v. Scott,* Tex.Civ.App., NRE, 483 S.W.2d 344; *City of Austin v. Capitol Livestock Auction Co.,* Tex., 453 S.W.2d 461; Rayburn, Texas Law of Condemnation p. 468.

Section 6, Article 3265 does not alter such rule. It merely provides a way for a landowner to be reimbursed for attorney's fees and other expenses where a condemnor institutes but later abandons suit.

■ The pertinent testimony here involved shows: After the entry of the award appellant deposited the money awarded in the registry of the court and obtained from the court an order for a writ of possession pursuant to which it took possession of the property on December 17, 1975. Appellant took complete control and management of the property and has continued to manage and control the property since such time. In most instances the rentals paid by the tenants were reduced. The Urban Renewal Agency gave the tenants advice and consultation on relocation to other places and advised them of the benefits available to them in case they moved. Some of the tenants moved. In some instances, fixtures and fixed improvements were removed, damaging and changing the property. The Urban Renewal Agency has been in possession of the property for more than fifteen months and during such period has had complete control and dominion over the property, and appellees are completely out of possession.

To restore appellees to the position they occupied before the condemnation proceedings, the buildings and premises would have to be restored to them in the same condition they were before the taking. Moreover, since rentals have been reduced and some tenants have moved out, appellant would also have to restore appellees to the same relative rental position—number of tenants, income, etc. Due to the very nature of the Urban Renewal Agency, this is not possible.

Ordinarily, the condemning authority may refuse to take the property sought to be condemned and decline to pay the award finally fixed by either special commissioners or a judicial tribunal. *Texas Power & Light Co. v. Cole,* 158 Tex. 495, 313 S.W.2d 524. However, when the condemning authority gains possession of land under and by virtue of condemnation proceedings and cannot thereafter restore possession to the landowner and thus reestablish the status quo, such authority cannot dismiss the condemnation proceedings under which possession was obtained and seek to relitigate the matter of damages. Such action would result in obvious prejudice to the landowner and if permitted would allow the condemning authority to try the damage issue again and again until it received a favorable to acceptable award. *Lower Nueces River Water Supply District v. Cartwright,* 160 Tex. 239, 328 S.W.2d 752 (1959).

We have concluded that the Urban Renewal Agency cannot now dismiss the condemnation proceedings. It took possession of appellees' property by virtue of a writ of possession requested by it and issued in such condemnation proceedings, and has continued in possession and control over an extended period of time. It is clear from the record that appellees cannot be returned to the same position they were in prior to the condemnation. Appellant's points of error No. 1 and 2 are overruled.[1]

1. Appellees have filed a post-submission brief which in effect states that after this case was heard and subsequent to oral argument in this Court, a fire occurred on one of the premises located at 806–812 West Commerce, completely gutting the structure and rendering the same uninhabitable. We have given no consideration to this brief in connection with the decision reached herein.

Appellant's last three points of error pertain to the amount of the award. By such points of error it asserts (1) there is no evidence to support the jury's answers to Special Issues No. 1 and 2; (2) the jury's answers to Special Issues No. 1 and 2 are against the great weight and preponderance of the evidence; (3) the jury's answer to Special Issues No. 1 and 2 are manifestly excessive and the trial court erred in failing to grant a remittitur.

Appellant initially contends that the qualifications of appellees' value witnesses are at best minimal and that by contrast appellees' witnesses are among the most experienced and best informed appraisers in the State of Texas. It further asserts that appellees' appraisals are not based on proper or accepted methods of appraisals and that such appraisals are in the nature of mere conclusions and unsupported opinions and will not support the jury's answers.

■ The general rule is that a witness need not be an expert in a technical sense in order for his opinion as to values to be received. However, he must possess knowledge of the value standards of the class of property to which the subject property belongs. In this connection (a) he must have a knowledge of market value; (b) in the vicinity of the subject property; (c) based in part at least on personal observation and not solely on hearsay. *Tarrant County Water Control & Improvement Dist. v. Hubbard,* 426 S.W.2d 330 (Tex.Civ.App.— Tyler), *reversed and remanded on other grounds,* 433 S.W.2d 681 (Tex.1968); *State v. Sides,* 348 S.W.2d 446 (Tex.Civ.App.— Dallas 1961, writ ref'd n. r. e.); 2 McCormick & Ray, Texas Law of Evidence at 257, 261 (1956).

It is settled that the question as to whether a witness has the qualifications to testify about market value of property is largely within the sound discretion of the trial court. *Premier Petroleum Co. v. Box,* 255 S.W.2d 298 (Tex.Civ.App.—Eastland 1953), *writ ref'd n. r. e., per curiam,* 152 Tex. 321, 257 S.W.2d 105 (1953); *City of Teague v. Stiles,* 263 S.W.2d 623 (Tex.Civ.

App.—Waco 1953, writ ref'd n. r. e.); Rayburn, Texas Law of Condemnation § 215, at 568 (1960).

■ The witness' own statement that he knows the land in question and is acquainted with the market value is usually held sufficient to authorize the reception of his testimony as to value. *Tarrant County Water Control & Improvement Dist. v. Hubbard, supra; State v. Newton,* 391 S.W.2d 758 (Tex.Civ.App.—Waco 1965, no writ); *State v. Sides, supra.*

The value testimony may be summarized as follows:

Nelson Cory, a witness for appellant, is a real estate broker and real estate appraiser who has been in business for 25 years and is a member of the Society of Real Estate Appraisers and the American Institute of Real Estate Appraisers. He testified that he was personally acquainted with the property involved, and in connection with his testimony, pictures of the subject property were introduced into evidence. He testified that the property in both parcels was in poor condition.

His testimony reflects three methods of appraising property, and is as follows: *Parcel No. 462.* (1) cost depreciation approach —$104,500.00; (2) market approach—$99,-500.00; (3) income approach—$76,300.00. *Parcel No. 471.* (1) cost depreciation approach—$39,247.00; (2) market approach— $34,500.00; (3) income approach—$31,-525.00.

In conclusion he testified that the market approach was the best method, and that the fair market value of Parcel No. 462 is $99,-500.00 and that the fair market value of Parcel No. 471 is $34,500.00.

Mr. Charles Noble, a witness for appellant, is a real estate appraiser who has been in business about 22 years. He is a member of the American Institute of Real Estate Appraisers, the Society of Real Estate Appraisers, and the American Society of Real Estate Appraisers. He is familiar with the

property involved and testified that it is in fair to poor condition.

His appraisals are as follows: *Parcel No. 462.* (1) cost depreciation approach—$103,-475.00; (2) market approach—$102,500.00; (3) income approach—$101,000.00. *Parcel No. 471.* (1) cost depreciation approach—$39,275.00; (2) market approach—$37,-500.00; (3) income approach—$37,275.00.

In conclusion he stated that he preferred the market approach, and that the fair market value of Parcel No. 462 is $102,500.00, and of Parcel No. 471, $37,500.00.

Lauro L. Lopez, a witness for appellees, is a licensed real estate broker who has been in business since 1946. He has served on the Planning and Zoning Board and the Board of Equalization of the City of San Antonio and is a member of Centro 21. He stated that the Abdo property is in a good location for business; that he is familiar with the property; and that the property was above average structurally but that the interior needs some repairs and remodeling. Mr. Lopez testified that he considered three approaches in his value estimates but that he gave more weight to the replacement value and the market value than to the income value.

His appraisals were as follows: *Parcel No. 462.* (1) cost depreciation approach—$289,742.00; (2) market approach—$264,-500.00. He stated that in his opinion the fair market value of Parcel No. 462 was $268,830.00. *Parcel No. 471.* (1) cost depreciation approach—$124,509.00; (2) market approach—$111,000.00; (3) income approach—$95,150.00. His opinion of the fair market value of Parcel No. 471 is $110,500.00.

J. J. Falbo, a witness for appellees, is a general contractor who has been in business for 46 years. His testimony concerns only replacement costs and not the value of the buildings. He testified that the estimated cost of replacing the structures on Parcel No. 462 is $710,416.00 and for the structures on Parcel No. 471, $212,760.00.

There is also testimony as to the sale of various business properties in San Antonio which cover a wide range of properties and sales of such property, ranging from a high of $300,000.00 each for the Texas Theatre building and the South Texas building to a low of $85,000.00 each for the Paseo Del Rio Hotel building and the GPM Life building.

Mr. Moore, the manager of the Relocation Department of the Urban Renewal Agency, testified that his job is to administer the provisions of Federal law concerning relocation under the Uniform Relocation Act; that the subject properties were put under administration of the Relocation Department on December 17, 1975; that his tenants were informed of their rights under the Relocation Act. He testified as to the number of tenants in the subject property and the amount of rent paid by such tenants both at the time of the taking of such property and at the present time. Such testimony shows a reduction in rent of practically all of the rented property. He testified that one hotel is out of business and that a couple of tenants have moved.

A policeman testified that he walked a beat in the subject area for approximately five years and that it is in an area of heavy prostitution and several murders have occurred in the vicinity; that when buildings in the area are vacated they are vandalized and illegal aliens live in them.

A letter from appellees to the Urban Renewal Agency was read which stated in effect that appellees had received a letter from the City of San Antonio which notified them that certain major repairs must be made in order to bring the structures to meet existing criteria of the building codes; and that upon receiving estimates for the work necessary to comply with the present codes that they found the costs would be prohibitive, considering the types of businesses they can lease to and the amount of rent they can charge.

Winston Martin, Executive Director of the San Antonio Development Agency, testified that the Abdo properties are the last two to be taken by the Urban Renewal Agency in this project; that the property is to be rehabilitated for retail use on the ground floor and efficiency apartments on the upper floor; that the Urban Renewal Agency is trying to keep people living in

the area; that the purpose of the Urban Renewal Agency action is to upgrade conditions in the neighborhood that are substandard.

We overrule appellant's point of error that there is no evidence to support the jury's answers to Special Issues No. 1 and 2. A more serious question is whether such answers are: (a) against the great weight and preponderance of the evidence or; (b) manifestly excessive. It is seen that there is a wide range of value testimony as to both parcels and a wide variance on the values placed on the property by the Special Commissioners and by the jury.

Rule 328, Tex.R.Civ.P. (1978), provides that new trials may be granted when the damages are manifestly too small or too large. It is settled that the trial court and the appellate courts have a duty to weigh and consider the evidence in a condemnation case, and the appellate courts will either order a remittitur or will reverse and remand condemnation cases where the damages awarded are inadequate or excessive. The method most often used to cure the excessiveness is to require that a remittitur be filed upon condition of allowing the judgment to stand. Rayburn, Texas Law of Condemnation § 226, at 581 (1960).

Rule 440, Tex.R.Civ.P. (1978), provides that in civil cases appealed to a court of civil appeals, if such court is of the opinion that the verdict and judgment of the trial court is excessive and that said cause should be reversed for that reason only, then said appellate court shall indicate to such party or his attorney within what time he might file a remittitur of such excess. If such remittitur is so filed, then the court shall reform and affirm such judgment in accordance therewith. If not filed as indicated, then the judgment shall be reversed.

There are numerous cases holding that if the court of civil appeals is of the opinion that the verdict and judgment of the trial court is excessive, it may suggest a remittitur of excessiveness, and if the remittitur is not filed, then the court can reverse the trial court's judgment. *Adams v. Houston Lighting & Power Co.,* 158 Tex. 551, 314 S.W.2d 826 (1958); *Carter v. Texarkana Bus Co.,* 156 Tex. 285, 295 S.W.2d 653 (1956); *Missouri-Kansas-Texas Railroad Co. v. Pierce,* 519 S.W.2d 157 (Tex.Civ.App.—Austin 1975, writ ref'd n. r. e.); *Southern Steel Co. v. Manning,* 513 S.W.2d 273 (Tex. Civ.App.—Waco 1974, no writ); *Melton v. State,* 395 S.W.2d 426 (Tex.Civ.App.—Tyler 1965, writ ref'd n. r. e.); *City of Dallas v. McLemee,* 378 S.W.2d 393 (Tex.Civ.App.—Dallas 1964, no writ); *County of Bexar v. Cooper,* 351 S.W.2d 956 (Tex.Civ.App.—San Antonio 1961).

It is seen that there is a wide range of value testimony by the expert witnesses as to the value of the subject property. The fair market value placed on the property by appellant's two expert witnesses is less than one-half the value found by the jury; and that of appellees' expert witnesses, a slight amount more than the value found by the jury. It appears from other testimony that the property is in a somewhat run down condition and is in need of considerable repairs. It also appears that the rents received for the rental property is low and it is considered in a low rent area. One of appellant's expert witnesses testified that the property was in poor condition; the other testified that it was in poor to fair condition. Appellees' expert witnesses testified that the exterior of the property was in good condition, but that the interior was in need of repairs. Appellees themselves wrote the Urban Renewal Agency that the City of San Antonio had notified them that major repairs must be made to meet existing standards of the building code; that appellees had obtained estimates as to the cost of the repairs necessary to comply with the present building codes; that based on such estimates they found the cost prohibitive, considering the types of businesses appellees could lease to and the amount of rent they could charge.

■ After a careful consideration of the entire record, we have concluded that the jury's verdict as to Special Issues No. 1 and 2 are manifestly excessive. We have come to the conclusion that the verdict and judgment as to Parcel No. 462 is excessive by the sum of $50,000.00 and that the verdict

and judgment as to Parcel No. 471 is excessive by a sum of $20,000.00.

The judgment of the trial court will therefore be affirmed if appellees will file within 30 days hereof a remittitur in writing of the $50,000.00 as to Parcel No. 462 and $20,000.00 as to Parcel No. 471; otherwise said judgment will be reversed and remanded for a new trial.

Affirmed on condition of remittitur.

## SUPPLEMENTAL OPINION

Appellees having filed in writing the remittitur as suggested in our original opinion, it is ordered that the judgment, as reduced by the remittitur, be in all things affirmed.