Nos. 77,684
77,685

CITY OF WICHITA, KANSAS, A Municipal Corporation, *Appellant,*
v. OTTO MEYER and R.E.M. PROPERTIES, *Appellees.*
(939 P.2d 926)

Opinion filed
May 30, 1997.

*Joseph W. Kennedy*, of Morris, Laing, Evans, Brock & Kennedy, Chartered, of
Wichita, argued the cause, and *Robert W. Coykendall*, of the same firm, and *Gary
E. Rebenstorf*, director of law, and *Douglas J. Moshier*, senior assistant city attor-
ney, were with him on the briefs for appellant.

*Robert W. Kaplan*, of Kaplan, McMillan & Harris, of Wichita, argued the cause
and was on the briefs for appellee R.E.M. Properties.

The opinion of the court was delivered by

Six, J.: This first impression case arises from a condemnation
initiated by the City of Wichita (City) to acquire land for its $6
million ice rink project. The issues are tied together in a land ac-
quisition Gordian knot. Our task is to resolve the controversy with-
out harming established concepts of eminent domain law. In doing
so, we untie rather than arbitrarily cut the knot.

The City appeals two orders entered by the district court. In the
first order, after the property owner R.E.M. Properties (REM)
appealed the initial condemnation award, the district court held
that it had no jurisdiction over either REM or its property (tracts
47 and 48). The City failed to list REM and tracts 47 and 48 in the
condemnation petition for the land on which the ice rink was to
be built. The City did not amend the petition to add tracts 47 and
48 until after that initial award. In the second order, in a partial
ruling on REM's motion for expenses following the City's failure
to deposit the second condemnation award, the district court held
that the City had abandoned the condemnation proceeding, had
no title or right to possession, and had to surrender possession and
remove all ice rink improvements.

Our jurisdiction is under K.S.A. 60-2102(a) (final order or in-
junction) and K.S.A. 20-3018(c) (transfer on our motion).

## The Issues

The issues are whether: (1) the district court had jurisdiction to
consider statutory defects in the condemnation proceeding raised
by REM after REM appealed the initial condemnation award but
before trial of that appeal; (2) the City acquiesced in the district
court's ruling that it had no jurisdiction over REM or its property

at the time of the initial condemnation award; (3) the district court erred in determining that the initial condemnation award was void; and (4) the district court erred in determining that the City had abandoned its condemnation and in entering injunctive relief against the City.

We affirm in part, reverse in part, and remand. The ice rink survives. Although the City has taken REM's property, it has abandoned the condemnation proceeding. REM is entitled to reasonable expenses under K.S.A. 26-507(b) and has an inverse condemnation claim against the City.

## FACTS

The facts are unique. Neither the parties nor our independent research have located a similar condemnation case. In November 1994, the City passed an ordinance approving the acquisition of private property by eminent domain to build a public ice skating rink. The published ordinance listed 17 tracts to be taken, including REM's property, tracts 47 and 48. On December 22, 1994, the City filed its petition in eminent domain to acquire the necessary property. The petition listed only seven of the tracts shown in the ordinance and the names and addresses of the record owners and lienholders for those tracts. Tracts 47 and 48 were not listed, and REM was not named as a party. Notice of the filing of the petition was published, stating that the petition was to be heard on January 6, 1995. The notice did not list tracts 47 or 48 or name REM. The affidavit of mailing said that copies of the notice were mailed to persons shown in the notice (not including REM).

The district court found that the City had the power of eminent domain and that the ordinance described the property being condemned. An order dated January 6, 1995, appointed three appraisers and set the time for filing of the appraisers' report.

Notice of a public hearing on the appraisers' report was published. The public hearing notice showed REM in the caption, listed nine tracts, including tracts 47 and 48, and listed the record owners and lienholders of all of those tracts (including REM). An affidavit of mailing stated that copies of the notice were mailed to the persons shown in the notice.

The appraisers' report was filed. Regarding notice of the public hearing before the appraisers, the report provided:

"On the 13th day of January, 1995, we mailed copies of said published notice of our Public Hearing to the Plaintiff and all Defendant parties named in the petition whose addresses were known to us or could with reasonable diligence be ascertained, the proof of which mailing has been filed in this action."

The report listed damages for the taking of five tracts, 34, 37, 47, 48, and 53, for a total of $191,080. Tracts 47 and 48 were valued at $29,000. An order approving the appraisers' report and allowing the appraisers' fees and costs was entered. The City deposited the total appraisers' award, plus fees and costs with the clerk of the district court. Notice of the deposit was mailed to REM by the clerk's office. The City mailed notice of the appraisers' award to the landowners shown in the appraisers' report (including REM). The notice informed the landowners that they had 30 days from the date of filing of the appraisers' report to appeal the award.

An undated order filed January 30, 1995, granted the City leave to file an amended petition without further notice or hearing to add two tracts, the owners, and interested parties "who were inadvertently omitted from this proceeding and who are necessary parties hereto."

On March 1, 1995, REM filed a notice of appeal of the appraisers' award for tracts 47 and 48, asserting that REM was dissatisfied with the award and also reserving the right to contest both irregularities in the proceeding and jurisdiction. The next day, the City filed its amended condemnation petition, naming REM in the caption and listing nine tracts, including 47 and 48, and their record owners and lienholders.

Trial on REM's appeal of the appraisers' award was scheduled for December 5, 1995. On November 21, 1995, REM filed a motion for an order remanding the matter to a new panel of court-appointed appraisers for another damage determination, arguing that the court lacked jurisdiction as to the first appraisers' award. REM reasoned: (1) Neither the landowner nor tracts 47 and 48 were listed in the initial condemnation petition; (2) the landowner was not named as a party and was not sent any notice of the peti-

tion; (3) the order granting the City leave to file an amended petition was obtained ex parte and was not filed until January 30, 1995; and (4) the City did not file its amended petition until March 2, 1995, after approval of the first appraisers' report.

The City countered that any notice problem should have been addressed before appealing the award and, by appealing, REM could only challenge the amount of the award. The City also argued that the district court lacked jurisdiction to order a remand once an appeal was filed. In an oral ruling on November 27, 1995, the district judge advised that REM's motion would be granted. However, the judge said that he would delay entering the order to allow the City to decide whether to appeal. The judge claimed that the City's counsel later told him that an order would not be necessary. No one appeared for trial on December 5, 1995, and in February 1996, REM's appeal of the $29,000 award was administratively dismissed for lack of prosecution.

The City proceeded to obtain another appraisers' award for tracts 47 and 48 and published notice of hearing on the filing of the City's amended petition during the week starting April 19, 1996. The notice listed REM and tracts 47 and 48, and provided that hearing on the amended petition would be held before the district court on May 7, 1996. Notice of the hearing was mailed to REM. Three appraisers were appointed (two had been appraisers on the first panel). On May 24, 1996, the appraisers filed their report awarding $132,325 as damages for the taking of tracts 47 and 48. The appraisers' report was approved and appraiser fees and costs allowed and paid by the City. The City notified REM of the filing of the appraisers' report but did not deposit the second award with the clerk of the district court. No appeal was taken. By the time of the second appraisal, the City had possession of tracts 47 and 48, the existing improvements had been demolished, and construction of the ice rink was underway.

On July 8, 1996, REM filed a motion requesting an award of expenses and reasonable attorney fees under K.S.A. 26-507, asserting abandonment because of the City's failure to deposit the second award. The City opposed the motion, contending there was

no abandonment because the City had deposited the first award of $29,000.

At the conclusion of the hearing on the motion, the district judge said: "Court's going to award the return of the property and the removal of the improvements from that property at the expense of the condemning authority." The judge reiterated his oral ruling of November 27, 1995, that the court had no jurisdiction as to tracts 47 and 48 at the time of the initial $29,000 award.

REM's attorney prepared proposed journal entries reflecting the court's rulings, but the City objected. The parties appeared for hearing on the disputed journal entries. The court made a detailed recitation of the facts and adopted the journal entries prepared by REM's attorney, one reflecting the court's November 27, 1995, oral ruling that it had no jurisdiction as to the $29,000 award and the other, concerning REM's motion for expenses, holding that: (1) the City had abandoned tracts 47 and 48, (2) REM was the owner of 47 and 48, (3) the City had no right to possession, (4) title was quieted against the City, and (5) the City should surrender possession to REM and remove the improvements. The judge left open the issue of REM's expenses and attorney fees until REM recovered its property.

The City has appealed both orders. We granted the City's application for a stay pending appeal, along with REM's request for expedited consideration. The district court's order for removal of improvements would have caused the ice rink to be demolished. (At oral argument we were informed by counsel for REM that tracts 47 and 48 are now under the ice.)

## DISCUSSION

A de novo standard of review applies; statutory interpretation and conclusions of law are involved. See *Todd v. Kelly*, 251 Kan. 512, 515, 837 P.2d 381 (1992).

### District Court Jurisdiction

The City argues that the district court lacked jurisdiction to consider any statutory defects in the condemnation proceeding or enter any order correcting, modifying, or amending the first appraisers' report after REM appealed the first award. According to the

City, REM's remedy after the first award was to pursue an inverse condemnation action because the court lacked jurisdiction to grant REM any relief in the condemnation proceeding. REM responds that it could have filed an inverse condemnation action at that point, in view of the invalidity of the first appraisers' report, but the City's election to seek the second appraisers' report negated any need to file such an action.

We recently summarized the Eminent Domain Procedure Act, K.S.A. 26-501 *et seq.*, (the Act) in *Landau Investment Co. v. City of Overland Park*, 261 Kan. 394, 930 P.2d 1065 (1997). In *Landau*, we affirmed the district court's order in the appeal of the condemnation award allowing the condemnor to amend the petition and appraisers' report under K.S.A. 60-215(b) to correct the legal description of the property condemned. The City of Overland Park sought to condemn certain drainage and temporary construction easements on property owned by Landau. Although the legal descriptions in the city's condemnation petition placed the easements approximately 200 feet from the correct location, all of the parties, including the city, Landau, the appraisers, and the contractor worked from the correct legal description provided by the project plans prepared by the engineers. However, the appraisers' report also contained the same erroneous legal descriptions used in the petition. Landau appealed the condemnation award. The city discovered the error and notified Landau during trial preparation. Landau filed an inverse condemnation action. The city then moved to amend the original condemnation petition and appraisers' report to correct the legal description. The district court granted the amendment. Landau failed to show any prejudice. The district court made the appropriate findings for an interlocutory appeal. We affirmed, deciding that "the mistake in description was not the kind of 'vital failure' which 'vitiates the proceeding.' " 261 Kan. at 403 (citing *Dick v. Drainage District No. 2*, 187 Kan. 520, 527, 358 P.2d 744 [1961]). In disagreeing with Landau's argument that the district court was without jurisdiction to authorize amendments to pleadings on appeal from a condemnation award, we relied on K.S.A. 60-215(c) and allowed the amendment correcting the legal description to relate back to the time of the filing of the petition.

"It must again be emphasized that all parties relied upon the correct description in the project plans, that the property appraised was the property intended to be condemned, that all parties proceeded with full knowledge of the property sought to be condemned, that neither the parties nor the court was deceived or misled, and that the record contains no evidence of any prejudice to the landowner. In fact, granting the amendment under these circumstances preserves judicial economy, reduces costly expense and delay, and serves to promote justice in these proceedings." 261 Kan. at 410.

The amendment in *Landau* ensured that trial of the appeal would be based on the correct property description. *Landau* did not consider the question of whether statutory defects rendering the condemnation proceeding void could be raised after an appeal is filed. However, *Landau* is authority for allowing nonprejudicial corrections to the petition and appraisers' report after an appeal of an award has been filed. A sensible extension of *Landau* permits consideration, after filing an award appeal, of whether the condemnation proceeding is void because of statutory defects in the petition.

In arguing that once an appeal is taken from an award, the district court has no jurisdiction to consider an attack on the validity of a condemnation proceeding, the City relies on *State v. Boicourt Hunting Ass'n*, 177 Kan. 637, 644-45, 282 P.2d 395 (1955). However, *Boicourt* did not involve a claim that the condemnation was void because the condemnor failed to comply with the statutory eminent domain procedure.

In *In re Condemnation of Land for State Highway Purposes*, 235 Kan. 676, 683 P.2d 1247 (1984), after the appraisers' report was filed, the landowners filed several motions in a highway project condemnation proceeding initiated by the Secretary of Transportation. The motions sought to challenge condemnor's compliance with certain federal and state legislation and the district court's finding that the takings were for lawful purposes. Landowners also sought to have the construction plans produced and made a part of the petition, to extend the appraiser's proceedings, to amend the taking, and to disqualify an appraiser. The district court denied the motions. The landowners appealed the condemnation award and denial of the motions. The first question was whether there

was jurisdiction to consider denial of the motions. The landowners argued that jurisdiction existed under K.S.A. 60-2102(a)(3) (proceeding involving title to real estate) or (a)(4) (final order). We held that the landowners had no right to appeal the adverse ruling on the motions. We did not say that the motions could not be filed in the condemnation proceedings, but held that an interlocutory appeal was not allowed. None of the motions raised statutory defects in the condemnation proceeding. Like *Boicourt, In re Condemnation of Land for State Highway Purposes* is distinguishable.

If a landowner attacks the condemnation proceeding in a separate action and chooses not file an appeal of the condemnation award, then the landowner assumes the risk that the court may not find the condemnation proceeding void, and the time to appeal the condemnation award will have expired. Had the landowner raised the statutory defects in the condemnation proceeding instead of in a separate action, those statutory defects possibly could have been corrected and trial of the award appeal avoided. Here, REM was denied input in the initial appraisal process. After REM appealed the first award, it raised the statutory defects. The district court ruled that those defects rendered the condemnation proceeding void for lack of jurisdiction over REM's property. The City then followed the statutory procedure in obtaining a second appraisal, and REM did not pursue its appeal of the first award.

Although a landowner may attack the validity of a condemnation in a separate proceeding, as in *Dick*, 187 Kan. 520, there is no provision in the Act preceding a landowner from raising statutory defect arguments in the condemnation proceeding when the defects render the proceeding void. Absent waiver, estoppel, or laches, a landowner may raise statutory defects either before or after the appeal of an award. Although K.S.A. 26-508 provides that an appeal is limited to the issue of compensation, raising statutory defects that render the condemnation proceeding void before trial of the appeal is not foreclosed.

### Does Appeal of the Award Waive Statutory Defects in the Proceeding?

The City argues that REM waived any defects in the condemnation proceeding by appealing the initial condemnation award.

REM points out that it expressly reserved jurisdiction objections in its notice of appeal.

In *Unified School District v. Turk*, 219 Kan. 655, 549 P.2d 882 (1976), the landowners, Mr. and Mrs. Turk, received the required statutory notices and did not appeal the award in a school district's condemnation action. However, later, after the school district deposited the award and took possession, Mrs. Turk moved for reconsideration of the appraisers' report. Mrs. Turk attempted to raise various defects in the proceeding, claiming she did not receive any notices, did not understand English and was ignorant of the proceedings, and that the property was worth substantially more. The district court ordered that the appraisers meet with the Turks, consider whether a larger award should be made, and file a supplemental report. The supplemental report reaffirmed the initial award. The Turks appealed the supplemental award. The school district moved to dismiss and appealed the order reconvening the appraisers and extending the time to appeal the condemnation award. We reversed the order reopening the condemnation proceedings and affirmed dismissal of the Turks' appeal of the condemnation award. We agreed with the school district's contention that the district court did not have authority to reopen the proceedings after the time to appeal the original award had expired, "absent any failure to comply with the statutory requirements which would render the proceedings void." 219 Kan. at 658. The inference from *Turk* is that had statutory defects rendered the proceedings void, a reopening may have been proper.

*Turk* is distinguishable from this case because it did not involve a statutorily defective condemnation proceeding. The Turks requested another appraisal after claiming not to have received sufficient notice of the first appraisal. They did not appeal the first condemnation award. The question of whether statutory defects in the proceeding could have been raised after appeal of the award was not considered.

The City cites early road condemnation cases in arguing that REM waived any defects in the condemnation proceeding once the initial condemnation award was appealed: See *Wilson v. Cloud County*, 90 Kan. 107, 132 Pac. 1176 (1913); *Wilson v. Cloud*

*County*, 87 Kan. 798, 126 Pac. 642 (1912); and *Flagel v. Jackson County*, 83 Kan. 709, 112 Pac. 622 (1911). The three early cases did not consider failure to comply with the statutory condemnation procedure and, thus, also are distinguishable.

### The City's Acquiescence

REM argues that the City's actions in pursuing a new appraisal establish acquiescence in the November 1995 ruling (journalized in the first order in this appeal). However, because the issue of the validity of the initial condemnation award must be addressed in our review of the second order (granting the injunctive relief), we find it unnecessary to consider the acquiescence question.

### Statutory Defects in the Initial Condemnation Award

Under the provisions of K.S.A. 26-502, the condemnor's only obligation in naming parties is to name in the petition the owners and all lienholders of record and any party in possession. *Morgan v. City of Overland Park*, 207 Kan. 188, Syl. ¶ 6, 483 P.2d 1079 (1971). The property rights taken by a condemnor are to be determined by the language in the petition and in the appraisers' report. A condemnor bears the burden of drafting its petition to show the limitations in its taking. *Hudson v. City of Shawnee*, 246 Kan. 395, Syl. ¶ 2, 790 P.2d 933 (1990).

The City did not comply with K.S.A. 26-502 and K.S.A. 26-503. The City failed to name REM and to list tracts 47 and 48 in its initial condemnation petition and also failed to include REM in the initial publication and mailing following the filing of the petition. REM was not notified that its property (tracts 47 and 48) was being condemned by the City, and was not given notice of the date fixed for the court to consider the initial petition and to appoint appraisers. The record is conflicting about whether REM received notice of the January 25, 1995, appraisers' hearing. REM was denied the opportunity of any input into the selection of appraisers. REM was given that opportunity after the City filed its amended petition and a different panel of appraisers was appointed (although two of the three were the same), resulting in a substantially higher award.

REM would have known that its property was being condemned, at the earliest, after the initial appraisers were already appointed. Even if notice was given of the hearing of the initial appraisers' report, and that notice also listed tracts 47 and 48, REM could have been confused because it was not given any notice that a condemnation petition had been filed against its property. The ex parte order authorizing the petition amendment did not mention REM or tracts 47 and 48. The order was not filed until January 30, 1995, the date the first appraisers' report was filed. As previously discussed, the petition amendment adding REM and tracts 47 and 48 was not filed until March 2, 1995. These vital failures in the initial petition (the jurisdictional instrument) and in statutory notice void the proceeding. See *Dick*, 187 Kan. at 527. The large discrepancy between the first ($29,000) and second ($132,325) appraisals implies that REM was prejudiced by the statutory defects in the first appraisal.

The City argues that *Landau* supports the ex parte petition amendment because we allowed a petition and appraisers' report amendment after appeal of the award. We observed in *Landau* that the statutory defects were not sufficiently serious to vitiate the proceeding. K.S.A. 26-502 provides in part: "No defect in form which does not impair substantial rights of the parties shall invalidate any proceeding." K.S.A. 26-503 provides in part: "No defect in any notice or in the service thereof shall invalidate any proceedings." The City reasons that REM had notice of the intent to condemn tracts 47 and 48 because the two tracts were included in the initial ordinance authorizing the condemnation and in the order approving the petition. However, the City did not pursue condemnation against all of the properties listed in the ordinance. Although it is conceivable that a condemnation petition might include tracts excluded from the appraisers' report (if the City decided not to pursue condemnation of certain tracts initially thought to be needed), K.S.A. 26-506 does not allow the appraisers' report to include tracts and record owners not listed in the petition. Unlike *Landau*, the defects in the City's initial condemnation petition and notice impaired substantial rights to the prejudice of REM.

K.S.A. 26-504 sets forth the necessary findings that the judge must make "from the petition" before the condemnation can go forward. If the petition fails to list the property to be condemned, it is impossible for the judge to make any of the findings to allow condemnation to go forward as to that property. K.S.A. 26-504 was not complied with.

The City claims that under K.S.A. 60-215(b) ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.") its March 2, 1995, petition amendment adding REM and tracts 47 and 48 to the proceeding was proper, although it was made after approval of the first appraisers' report. REM responds that no analogy to 60-215(b) should be drawn here because REM never received notice of or consented to this ex parte amendment. The City's K.S.A. 60-215(b) assertion is not well taken.

The district court's determination that the first condemnation award was void is affirmed.

### Timing of REM's Motion for Remand

Although REM reserved its statutory defect arguments in its notice of appeal of the first award filed March 1, 1995, it did not raise those arguments for hearing until November 1995 when it filed the motion for remand (only a month before the appeal was scheduled for trial). A review of the court file in March 1995 would have revealed those statutory defects. It is puzzling why REM waited so long. The City had taken possession of the property, cleared it, and commenced construction of the ice rink. However, REM did not seek to stop the ice rink project; it only sought a valid appraisal. REM's delay in filing the motion for remand did not prejudice the City. Also, as discussed below, after the district judge granted REM's motion, the City proceeded to obtain the second appraisal.

### Effect of City's Failure to Deposit Second Award While Retaining Possession

K.S.A. 26-507(a) provides:

"*Payment of award; vesting of rights*. If the plaintiff desires to continue with the proceeding as to particular tracts it shall, within thirty (30) days from the time the

appraisers' report is filed pay to the clerk of the district court the amount of the appraisers' award as to those particular tracts and court costs accrued to date, including appraisers' fees. Such payment shall be without prejudice to plaintiff's right to appeal from the appraisers' award. Upon such payment being made the title, easement or interest appropriated in the land condemned shall thereupon immediately vest in the plaintiff, and it shall be entitled to the immediate possession of the land to the extent necessary for the purpose for which taken and consistent with the title, easement or interest condemned. The plaintiff shall be entitled to all the remedies provided by law for the securing of such possession."

Although the City timely deposited the initial condemnation award of $29,000, it has not deposited the second award for tracts 47 and 48. The first appraisers' report was void as to REM. The City's argument that it has title by virtue of that deposit fails. The $29,000 on deposit is insufficient to cover the second award. The City failed to comply with K.S.A. 26-507(a). Title and the right to possession have not vested in the City. K.S.A. 26-507(b) provides that if the deposit is not timely made, then "condemnation is abandoned as to those tracts." However, under K.S.A. 26-507(a), the condemnor is entitled to possession only after deposit of the award. K.S.A. 26-507 does not contemplate a condemnor taking possession and using property before payment of the award.

The statutory requirement that the condemnor deposit the award before taking possession is firmly based in our early railroad right-of-way condemnation cases. See, *e.g.*, *Railway Co. v. Wilson*, 66 Kan. 233, 69 Pac. 342 (1903); *L.N. & S. Rly. Co. v. Whitaker*, 42 Kan. 634, 22 Pac. 733 (1889); *St. Jos. & D. C. Rld. Co. v. Callender*, 13 Kan. 496, Syl. ¶ 1 (1874).

REM claims that the City's failure to deposit the second award constitutes abandonment. Here, the City took possession of tracts 47 and 48 after deposit of the initial award of $29,000 on February 2, 1995, and has constructed a $6 million ice rink on the property. "Taking" in a condemnation proceeding means the acquiring of possession and right of possession and control of tangible property to the exclusion of the former owner. *Steck v. City of Wichita*, 179 Kan. 305, 313, 295 P.2d 1068 (1956). Although the City has not yet paid for the property, clearly, there has been a "taking." The City has had exclusive and continuous possession of the property since sometime shortly after February 2, 1995.

Abandonment is controlled by K.S.A. 26-507, and the City's failure to timely deposit the second award establishes abandonment of this condemnation proceeding. Under K.S.A. 26-507(b), REM is entitled to seek its reasonable expenses.

We acknowledge cases from other jurisdictions applying the rule that no abandonment can take place once the condemning authority takes possession of the property and uses it to the point that the status quo cannot be restored. See, *e.g.*, *Carl Roessler, Inc. v. Ives*, 156 Conn. 131, 140, 239 A.2d 538 (1968) (In highway condemnation proceeding, where highway commission took actual possession and demolished and removed buildings located on property to be condemned, once there had been a "taking," the condemnor could not unilaterally abandon part of the acquisition and require the landowner to return part of the deposit received.); and *Urban Renewal Agency of City of San Antonio v. Abdo*, 562 S.W.2d 872, 874 (Tex. Civ. App. 1978) (Urban Renewal Agency was not entitled to dismiss condemnation proceedings, where it had taken possession of landowners' rental property, continued possession for an extended time, certain fixtures and improvements had been removed, and some tenants had moved out.). However, in both *Ives* and *Abdo*, unlike this case, the condemning authority sought, and the condemnee opposed, abandonment.

### Inverse Condemnation

Inverse condemnation is an action initiated by the landowner and is available when private property has been taken for public use without formal condemnation proceedings and where it appears there is no intention or willingness of the taker to bring the action. *Lone Star Industries, Inc. v. Secretary, Kansas Dept. of Transp.*, 234 Kan. 121, Syl. ¶ 1, 671 P.2d 511 (1983). Because the City has taken REM's property and abandoned this condemnation proceeding, REM has an inverse condemnation claim against the City. See *Dick*, 187 Kan. 520, Syl. ¶ 1. The proper measure of damages in a condemnation proceeding should be based upon the conditions as they existed at the time the landowner's land was appropriated. *Collingwood v. Kansas Turnpike Authority*, 181 Kan.

43, 48, 310 P.2d 211, *vacated and reversed in part on reh.*, 181 Kan. 838, 317 P.2d 400 (1957).

### The Mandatory Injunction to Remove the Skating Rink

The City argues that the Act did not give the district court the authority to quiet title and order injunctive relief against the City, especially when REM sought no such relief in its motion for expenses. The City also argues that its due process rights were violated by the district court's *sua sponte* injunction because the City had no notice that any injunctive relief was being sought. REM responds that the district court was merely carrying out the legislative directives of the Act by affirming that the City's abandonment left title in the landowner and made the City's possession illegal. REM also responds that the position the City took in opposing REM's motion for expenses invited the district court to rule on the question of whether the City had title or any right to possess the property.

Several factors weigh against the injunctive relief imposed by the district court. REM has not contested the City's eminent domain power or argued that the taking of the property for the ice rink is unlawful. As the City points out, REM never asked for injunctive relief. The City took possession shortly after depositing the $29,000 award in February 1995 and, since then, has cleared the improvements and built an ice rink. See *Murray v. Kansas Dept. of Transportation*, 239 Kan. 25, 28, 716 P.2d 540 (1986) (denial of injunctive relief to halt condemnation of certain property upheld based on laches; condemnees waited 16 months before challenging the project, and construction was well underway). REM's only concern has been with the amount of compensation to be received for its property. Although the City has not yet paid full compensation for the property and does not have title to it, the amount of compensation due having not yet been judicially determined, no useful purpose would be served in requiring the City to demolish the ice rink and return REM's property. The status quo has been irretrievably altered. During oral argument REM's counsel was emphatic in saying that "their ice rink is not in danger." Demolition as injunctive relief is not appropriate.

## Conclusion

The initial $29,000 award is void for failure to comply with statutory procedure. The district court's ruling on that award is affirmed. The City has abandoned this condemnation proceeding by failing to deposit the second award. REM is entitled to seek reasonable expenses under K.S.A. 26-507(b). REM has an inverse condemnation claim against the City by virtue of the City's taking.

The district court is affirmed in part and reversed as to the injunctive relief imposed. The case is remanded for proceedings consistent with the opinion.

ABBOTT, J., not participating.

E. NEWTON VICKERS, senior judge, assigned.