No. 83,175

BONANZA, INC., and MOBILE HOMES RESORT, INC., *Appellants,* v. E. DEAN CARLSON, Secretary of Kansas Department of Transportation, *Appellee.*

(9 P.3d 541)

Opinion filed July 14, 2000.

*John R. Hamilton*, of Hamilton, Gregg, Barker & Johnson, of Topeka, argued the cause, and *Larry E. Gregg*, of the same firm, was with him on the briefs for appellants.

*Lee Thompson*, of Triplett, Woolf & Garretson, LLC, of Wichita, argued the cause, and *Bradley A. Stout*, of the same firm, was with him on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Landowners in an inverse condemnation proceeding appeal the district court's order denying landowners their attorney fees and litigation expenses.

On September 10, 1996, Bonanza, Inc., and Mobile Homes Resort, Inc., (landowners) entered into a right-of-entry agreement with the Secretary of the Kansas Department of Transportation (KDOT) granting KDOT the right to enter the landowners' land for the purpose of constructing a highway interchange. KDOT agreed in the contract that it would, "as expeditiously as possible, acquire the property . . . through negotiation or eminent domain action."

On December 18, 1996, the City of Wichita, on behalf of KDOT, filed a petition for proceedings in eminent domain, seeking to condemn Tract I and Tract III, parcels of real estate owned by landowners. The court appointed appraisers and set a time for the filing of the appraisers' reports. On December 3, 1997, the appraisers filed their report, valuing the interest taken in Tract I as $14,600 and in Tract III as $85,000.

KDOT failed to pay the award of the appraisers within the prescribed statutory time for payment. On February 23, 1998, the landowners filed a petition in district court, alleging inverse condemnation had occurred because the condemnation proceeding had been abandoned as a result of KDOT's failure to pay the appraisers' award within 30 days after the report of the appraisers was filed, as required by K.S.A. 26-507. The petition was amended on August 26, 1998, to include a prayer for damages as a result of KDOT's unlawful and willful occupation of the landowners' property; interest from the date of the taking; and reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees.

KDOT moved for partial summary judgment, claiming there was no Kansas statute allowing an award of attorney fees and expenses to the landowners. The district court took the question of attorney fees and expenses under advisement. After trial, the district court sustained KDOT's motion for partial summary judgment, finding there was no statutory authority for the landowners to be awarded fees and expenses. The landowners again raised the issue of attorney fees and expenses in a post-trial motion. The court treated the post-trial motion as a motion to alter or amend judgment and reaffirmed the earlier ruling that the landowners were not entitled to an award of attorney fees and expenses. The landowners appealed.

Landowners contend that the trial court erred in finding that there is no statutory authority in Kansas for payment of attorney fees in inverse condemnation cases where the land was acquired for a federally assisted state project. There are no material facts in dispute in this case. The parties stipulated that federal assistance funds were used to pay for a part of the cost of the project which resulted in the filing of the inverse condemnation lawsuit. The landowners were not displaced by the federally subsidized KDOT highway construction project.

Resolution of the issue on appeal requires the interpretation of statutes. Interpretation of a statute is a question of law, and the Supreme Court's review is unlimited. *Hamilton v. State Farm Fire & Cas. Co.*, 263 Kan. 875, 879, 953 P.2d 1027 (1998).

Federal and State Statutes and Regulations

In 1973, the Kansas Legislature enacted the Relocation Assistance For Persons Displaced by Acquisition of Real Property Act (Kansas Act), K.S.A. 58-3501 *et seq.*, requiring Kansas agencies and departments to comply with the provisions of the federal Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 (Federal Act), Pub. L. No. 91-646, 42 U.S.C. § 4601 (1994) *et seq.* See K.S.A. 58-3501.

The Federal Act prohibits a federal agency from approving any federally funded or assisted project in which a political subdivision of a state acquires real property without receiving assurances of the state that the acquiring political subdivision will (1) follow the land acquisition policies of the Federal Act to the extent possible under state law and (2) reimburse property owners for title transfer costs and litigation expenses under certain statutorily defined circumstances, including inverse condemnation proceedings. 42 U.S.C. § 4655 (1994).

K.S.A. 58-3502 provides, in part:

"Whenever any program or project is undertaken by the state of Kansas, any agency or political subdivision thereof, under which federal financial assistance will be available to pay all or part of the cost of such program by reason of a grant from or contract or agreement with the federal government, and which program or project will result in the displacement of any person by acquisition of real property, or by the direct result of building code enforcement activities, rehabilitation or demolition programs, the state, agency, or political subdivision may:

"(1) Provide fair and reasonable relocation payments and assistance to or for displaced persons as are required under sections 202, 203 and 204 of the federal act;

"(2) Provide relocation assistance programs offering to displaced persons and others occupying property immediately adjacent to the real property acquired, the services described in section 205 of the federal act on the conditions prescribed therein;

"(3) In acquiring the real property be guided to the greatest extent practicable under state law by the land acquisition policies in section 301 and the provisions of section 302 of the federal act; [and]

"(4) *Pay or reimburse property owners for necessary expenses as specified in sections 303 and 304 of the federal act.*" (Emphasis added.)

K.S.A. 58-3506 provides that state agencies and political subdivisions administering the Kansas Act may adopt such rules and

regulations as may be necessary to carry out of the provisions of the Act.

To implement the Kansas Act, KDOT adopted by reference the federal regulations associated with the Federal Act. K.A.R. 36-16-1 provides:

"(a) 49 C.F.R. Part 24, as of March 2, 1989, and all amendments thereto, is adopted by reference.

"(b) The provisions of 49 C.F.R. Part 24, as of March 2, 1989, and all amendments thereto, *shall be applicable to all acquisitions of real property* by the department of transportation for the state highway system including those acquisitions in which federal funds are not available for or used in payment of acquisitions." (Emphasis added.)

The federal regulations implementing the Federal Act and adopted by reference in K.A.R. 36-16-1 provide:

"The owner of the real property shall be reimbursed for any reasonable expenses, including reasonable attorney, appraisal, and engineering fees, which the owner actually incurred because of a condemnation proceeding, if:

"(a) The final judgment of the court is that the Agency cannot acquire the real property by condemnation; or

"(b) The condemnation proceeding is abandoned by the Agency other than under an agreed-upon settlement; or

"(c) The court having jurisdiction renders a judgment in favor of the owner in an inverse condemnation proceeding or the Agency effects a settlement of such proceeding." 49 C.F.R. § 24.107 (1999).

As previously noted, the Kansas Act and the corresponding regulations were enacted to bring Kansas into compliance with the Federal Act. See K.S.A. 58-3501; K.S.A. 58-3506. The Federal Act is divided into three titles. Title I contains the general provisions, including definitions and the provision that section 301 of Title III creates no rights or liabilities and does not affect the validity of any property acquisitions by purchase or condemnation. Pub. L. No. 91-646 §§ 101, 102, 42 U.S.C. § 4602(a) (1994).

Title II of the Federal Act is concerned principally with aid to persons displaced by federal or federally assisted state projects. The purpose of Title II is to establish a uniform policy for the fair and equitable treatment of persons displaced as a result of federal and federally assisted programs in order that such persons shall not suffer disproportionate injuries as a result of programs designed

for the benefit of the public as a whole. Section 202 provides for payment of moving and related expenses; section 203, for replacement housing; section 204, for replacement housing for tenants; section 205, for relocation assistance advisory services; section 210, for applicability of sections 202-205 to federally assisted state projects by written assurances of state agencies.

Title III of the Federal Act is concerned primarily with the acquisition of real property for federal and federally assisted state projects. Section 301 delineates nine real property acquisition practices "[i]n order to encourage and expedite the acquisition of real property by agreements with owners, to avoid litigation and relieve congestion in the courts, to assure consistent treatment for owners in the many Federal programs, and to promote public confidence in Federal land acquisition practices." Section 302 establishes policies for the acquisition of buildings, structures, and improvements; section 303, for payment of title transfer expenses to property owners; section 304, for payment of litigation expenses to property owners in condemnation actions; and section 305, for the applicability of sections 301-04 to federally assisted state projects by written assurances of state agencies. Section 305 provides:

"Notwithstanding any other law, the head of a Federal agency shall not approve any program or project or any grant to, or contract or agreement with, a State agency under which Federal financial assistance will be available to pay all or part of the cost of any program or project which will result in the acquisition of real property on and after the effective date of this title, unless he receives satisfactory assurances from such State agency that—

"(1) in acquiring real property it will be guided, to the greatest extent practicable under State law, by the land acquisition policies in section 301 and the provisions of section 302, and

"(2) *property owners will be paid or reimbursed for necessary expenses as specified in sections 303 and 304.*" (Emphasis added.)

In denying the landowners' motion for attorney fees and expenses, the district court found that the Kansas Act did not authorize an award for litigation expenses in this inverse condemnation case because the landowners had not been displaced or relocated.

The landowners argue that the district court erred in its construction of K.S.A. 58-3502 and the associated regulations. The

landowners point out that the district court's construction of K.S.A. 58-3502 is contrary to the express purpose of the Kansas Act, which is to bring Kansas into compliance with the Federal Act so that Kansas can obtain federal money to assist in state highway projects. The landowners assert that the Federal Act, the federal regulations, and the Kansas regulations authorized by K.S.A. 58-3502 do not limit the payment of litigation expenses to displacement cases.

KDOT argues (1) the Federal Act does not apply to states; (2) K.S.A. 58-3502, authorizing KDOT to promulgate regulations to comply with the Federal Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 allows, but does not mandate, payment of attorney fees in inverse condemnation cases; (3) K.S.A. 58-3502 concerns only persons displaced by a government acquisition of property; (4) the regulations promulgated by KDOT are void to the extent they exceed the authority of K.S.A. 58-3502; and (5) even if the regulations promulgated by KDOT are within the authority of K.S.A. 58-3502, they do not apply because Bonanza's cause of action is not an inverse condemnation proceeding.

### *Application of the Federal Act*

KDOT acknowledges that the Federal Act provides for the payment by the federal government of litigation expenses in inverse condemnation cases against the federal government. KDOT asserts, however, that the land acquisition policies in the Federal Act do not apply to it because (1) KDOT is not a federal agency as defined in Section I of the Federal Act, 42 U.S.C. § 4601(1)(1994); (2) there is no evidence that KDOT has complied or failed to comply with the state requirements under the Federal Act, specifically, the requirement to provide satisfactory assurances of compliance to the federal authorities; and, (3) the Federal Act pertains solely to a contractual relationship between the federal and state governments and does not create a landowner's cause of action for attorney fees in the event the state fails to comply with the land acquisition policies outlined in the Act.

KDOT argues that a state agency is not governed by the provisions of 42 U.S.C. 4654 (1994), which entitle successful landowners to litigation expenses, because that section applies only to taking

by a federal agency, not to an award under state condemnation. For authority, KDOT relies on *Richmond Elks Hall Assn. v. Richmond Redevelopment*, 561 F.2d 1327 (9th Cir. 1977); *Board of County Com'rs v. Ferrebee*, 844 P.2d 308 (Utah 1992); and *City of Buffalo v. Clement Co.*, 45 App. Div. 2d 620, 360 N.Y.S.2d 362, 365-66 (1974).

*Richmond* is an inverse condemnation case where the plaintiff's property was taken by a federally assisted city development agency prior to the adoption of the Federal Act. The plaintiff argued that section 305 of the Act mandated reimbursement of its litigation expenses. The Ninth Circuit noted that Section 305 and 24 C.F.R. § 42.145(a) governed acquisitions of real property on and after June 2, 1971. The plaintiff's property was acquired several years prior to that date. The *Richmond* court held that to the extent that the Federal Act creates a statutory right to litigation expenses, it did not create a right to such expenses prior to its enactment. 561 F.2d at 1333. Here, the taking by KDOT did not predate the effective date of the Federal Act or the Kansas Act.

In *Ferrebee*, the Utah Supreme Court denied litigation expenses under the Federal Act. In that case the Board of County Commissioners of Tooele County, Utah, (County) instituted condemnation proceedings against a landowner. The County appealed the district court's valuation of the property and the award of landowner's litigation expenses. The appellate court affirmed the valuation but denied the landowner's litigation expenses by determining that the Federal Act and the Utah State Act applied only to landowners who are physically displaced by condemnation. The appellate court further found that the policies outlined in Title III of the Federal Act apply only to federal agencies and programs. 844 P.2d at 312. We note that *Ferrebee* was not an inverse condemnation proceeding or judicial determination that the acquiring agency could not acquire the real property by condemnation, as contemplated by 42 U.S.C. § 4654 (litigation expenses).

In *Clement*, a state action in New York state, the New York Supreme Court reviewed a portion of the compensation awarded to the landowner as a result of a taking by the City of Buffalo by condemnation. The City had accepted federal assistance for the

project which resulted in the condemnation. The landowner argued that the Federal Act mandated an award of attorney fees. The *Clement* court stated:

"We do not construe the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, [U.S. Code, tit. 42, §§ 4654, 4655] as authority to award such fees. Section 4654 of that statute, by its terms, applies only to proceedings in federal courts. Section 4655 prescribes conduct between Federal agencies and State agencies in condemnation projects involving Federal moneys. It makes no reference to actions pending in State courts. All that section 4655 says is that no head of a Federal agency may approve payment of Federal funds to a State agency unless the State assures it that a condemned property owner's expenses, including attorneys' fees, will be paid in accordance with the provisions of section 4654. Subdivision No. 2 of section 74-b of the General Municipal Law gives municipal corporations the authority to provide for such expense payment to qualify for Federal funding. In this case, the City has not so provided and whether or not it should, at the risk of losing Federal funding for its waterfront redevelopment project, is a matter between the City and the Federal Government, beyond the scope of this litigation." 45 App. Div. 2d at 624.

Here, the landowners are not arguing that § 4654 of the Federal Act provides authority for Kansas to award litigation expenses in inverse condemnation proceedings against a state agency taking property for a federally assisted project. The authority for the award sought by the landowners are Kansas statutes and Kansas regulations enacted by the Kansas Legislature to comply with federal law. Under the Kansas regulations, state agencies receiving federal financial assistance are required to reimburse owners for incidental expenses and litigation expenses as provided in the federal statute as a precondition for receiving federal monetary assistance. K.S.A. 58-3502.

Regarding state assurances, the landowners do not contend that KDOT has failed to provide satisfactory assurances to the federal government. Because federal agencies must receive such assurances in order to grant federal funds, the landowners contend that KDOT's stipulation that it has received federal funds for the project created an assumption that KDOT has provided satisfactory assurances to the federal government.

Furthermore, documentary evidence indicates that KDOT did provide assurances to the federal authorities that it will comply with

the requirements of the Federal Act. In a brochure entitled *Right of Way Brochure for General Public when City or County Acquires Property for Federal-Aid Highway Project* which is distributed by KDOT to the general public, KDOT states: "The Kansas Department of Transportation has given assurances to the Federal Highway Administration that acquisition in Kansas for Federal Aid Highway projects will be guided to the greatest extent possible by the [Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970] and regulations." This is evidence that KDOT has provided assurances to the federal authorities that it will comply with the requirements of the Federal Act.

As to KDOT's argument that the Federal Act does not create a private right of action for litigation expenses, the landowners do not contend that they have a private right of action under the Federal Act. The landowners contend that their rights originate in state law which by reference adopts federal regulations. The landowners point out that the Kansas Act expressly designates that its purpose is to authorize compliance with the Federal Act. Therefore, KDOT's contentions regarding a private right of action under the Federal Act are without merit.

### Application of the State Act

KDOT also argues that (1) this case is not an inverse condemnation proceeding; and (2) K.S.A. 58-3502 applies only to persons displaced as a result of land acquisition, and, in such a case, the statute merely authorizes, not mandates, the payment of litigation expenses.

### Nature of the Proceedings

KDOT points out that it initially filed a condemnation proceeding and stipulated to the fact of the taking; therefore, there was no unauthorized taking without the owner's consent or an uncooperative condemnor. KDOT argues that under these circumstances, the proceeding instituted by the landowners was merely to determine the value of the taking. The landowners argue the inverse condemnation action was proper after the City abandoned its condemnation action.

Inverse condemnation is an action or eminent domain proceeding initiated by a person having an interest in realty, rather than by the government condemner. It is available when private property has actually been taken for public use without formal condemnation proceedings and where it appears there is no intention or willingness on the part of the taker to bring an action to acquire the property. *Deisher v. Kansas Dept. of Transportation*, 264 Kan. 762, Syl. ¶ 4, 958 P.2d 656 (1998).

The landowners argue that the City abandoned its condemnation of land when it failed to pay the appraiser award within the statutory period. The answer is contained in *City of Wichita v. Meyer*, 262 Kan. 534, 939 P.2d 926 (1997). In that case, the City of Wichita (City) inadvertently omitted two tracts of land in a petition in eminent domain instituted for the purpose of acquiring private property to build an ice skating rink. The notice of the filing of the petition was published; the notice omitted the two tracts.

The district court appointed appraisers and set the time for filing of the appraisers' report. When notice of the public hearing on the appraisers' report was published, the previously omitted two tracts were listed, along with the owner and lienholder of the tracts. Copies of the notice of public hearing were mailed to all the landowners shown on the petition as well as the landowner omitted from the petition. Following the hearing, the district court approved the appraisers' report. The City deposited the total appraisers' award, plus fees and costs, with the clerk of the district court.

Notice of the deposit was mailed to the landowners, including the owner of the two tracts omitted from the petition. The notice of deposit informed the landowners that they had 30 days from the date of filing of the appraisers' report to appeal the award. The owner of the two tracts omitted from the petition appealed the appraisers' award, asserting dissatisfaction with the award and reserving the right to contest irregularities in the proceeding and jurisdiction.

After the City became aware of the omission of the two tracts, it moved the district court to amend the petition. The district court allowed the City to file an amended petition and without further notice or hearing to add the two tracts, the owner, and interested

parties who were inadvertently omitted from the proceeding and who were necessary parties. A trial date on the landowners' appeal was set.

The City obtained a second appraisers' award for the two tracts and published notice of the hearing on the filing of the City's amended petition. The notice listed the previously omitted tracts. The notice of the hearing was sent to the owner of the tracts. Prior to the second appraisal, the City took possession of the two tracts, the existing improvements had been demolished, and construction of the ice rink was commenced.

The appraisers' report, valuing the tracts at a substantially greater sum than previously reported, was filed and approved by the court. The City notified the owner of the tracts of the filing of the appraisers' report but failed to deposit with the clerk of the district court the additional money required by the greater second award. No appeal was taken.

The tract owner filed a motion requesting an award of expenses and reasonable attorney fees, asserting abandonment because of the City's failure to deposit the second award. The City opposed the motion, contending there was no abandonment because the City had deposited the initial award.

At the conclusion of the hearing on the motion, the district judge returned the property to the landowner and ordered the removal of the improvements from the property at the expense of the condemning authority. The judge based the award on lack of jurisdiction of the two tracts of land at the time of the initial appraisers' award. The City appealed, contending that the deposit of the appraisers' initial award vested title to the property in the City.

Regarding the effect of the City's failure to deposit the appraisers' second award, the *Meyer* court noted that K.S.A. 26-507(b) provides that if the deposit is not timely made, " 'condemnation is abandoned as to those tracts.' " 262 Kan. at 547. The court concluded that the deposit of the first award did not vest title to the property in the City because that deposit was insufficient to cover the second award. The *Meyer* court held that even though the City had exclusive possession of the tracts, the condemnation proceeding had been abandoned because of the City's failure to timely

deposit the total amount due for the second award. 262 Kan. at 548.

The *Meyer* court then determined that the tract owners had an inverse condemnation claim against the City:

"Inverse condemnation is an action initiated by the landowner and is available when private property has been taken for public use without formal condemnation proceedings and where it appears there is no intention or willingness of the taker to bring the action. [Citation omitted.] *Because the City has taken REM's property and abandoned this condemnation proceeding, REM has an inverse condemnation claim against the City.* [Citation omitted.] The proper measure of damages in a condemnation proceeding should be based upon the conditions as they existed at the time the landowner's land was appropriated. [Citation omitted.]" (Emphasis added.) 262 Kan. at 548-49.

In *Meyer*, the City clearly was cooperative in all aspects of the condemnation: It instituted a condemnation proceeding, it admitted that title to the land had passed to the City, and it destroyed the condemnees' improvements on the land and constructed an ice skating rink; the City was willing to condemn the land and pay the condemnees compensation. The only issue was the amount of compensation. The fact that the City did not dispute the taking was not determinative of whether the tract owners had an inverse condemnation claim against the City. The dispositive facts were that the City had taken the property and had abandoned the condemnation proceeding, leaving the tract owner without just compensation.

Here, KDOT is willing to condemn the property and stipulates it took the property. However, KDOT took the landowners' property and then did not pay into court the award determined by the appraisers; by statute, this is an abandonment of the condemnation proceeding. See K.S.A. 26-507. Therefore, KDOT's condemnation proceeding was, in fact and law, abandoned. Under such circumstances, the inverse condemnation proceeding action filed by the landowners was proper.

### K.S.A. 58-3502

KDOT's contention that K.S.A. 58-3502 authorizes but does not mandate the payment of expenses associated with land acquisition and relocation is correct. The landowners point out that K.S.A. 58-

3502 is an enabling statute and, together with K.S.A. 58-3506, the statutes authorize the promulgation of regulations necessary to carry out the payments specified in K.S.A. 58-3502.

It is well established that administrative regulations within the statutory authority conferred upon the agency have the force and effect of law. K.S.A. 77-425; *Board of Sedgwick County Comm'rs v. Action Rent To Own, Inc.*, 266 Kan. 293, 299, 969 P.2d 844 (1998). If the KDOT regulations are within the authorized scope of the Kansas Act, they are afforded the force and effect of law and do provide, by reference to the federal regulations, for the payment of litigation expenses in inverse condemnation cases. The last question remaining is whether K.S.A. 58-3502 authorizes the payment of litigation expenses to persons not displaced by the government taking.

KDOT's contention that K.S.A. 58-3502 pertains only to displaced persons is based on the introductory heading of the statute and the limiting language in the body of the statute. The introductory heading provides: "Displacement of persons pursuant to programs involving federal government; powers of state and local governments." The introductory heading is not dispositive because the title or caption prefacing the text of a statute is prepared by the Revisor of Statutes and forms no part of the statute itself. See *State v. Logan,* 198 Kan. 211, 217, 424 P.2d 565 (1967).

KDOT is correct that the language in the body of K.S.A. 58-3502 specifically limits its application to displaced persons: The State may pay or reimburse property owners for the necessary expenses as specified in section 303 and 304 of the Federal Act "[w]henever any program or project is undertaken by the state of Kansas . . . under which federal financial assistance will be available to pay all or part of the cost of such program . . . *and which program or project will result in the displacement of any person by acquisition of real property"* (Emphasis added.) K.S.A. 58-3502. Although section 304 of the Federal Act requires the reimbursement of litigation expenses to property owners who successfully maintain inverse condemnation proceedings without regard to whether the owner was displaced by the taking, the Kansas Act in

K.S.A. 58-3502 limits the reimbursement of litigation expenses to displaced persons.

If K.S.A. 58-3502 is read to authorize payment of litigation expenses only where the condemnee is displaced as a result of a federally funded or assisted project, Kansas will not be in compliance with the Federal Act. The Federal Act does not make payments under section 304 contingent upon the limitations of state law, as it does with the payments outlined in sections 301 (property acquisition practices) and 302 (buildings, structures, and improvements).

" ' "As a general rule, statutes are construed to avoid unreasonable results. [Citation omitted.] There is a presumption that the legislature does not intend to enact useless or meaningless legislation. [Citation omitted.]" [Citation omitted.]

". . . In construing statutes, the legislative intention is to be determined from a general consideration of the entire act. Effect must be given, if possible, to the entire act and every part thereof. To this end, it is the duty of the court, as far as practicable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible." [Citation omitted.]' " *KPERS v. Reimer & Koger Assocs., Inc.*, 262 Kan. 635, 643-44, 941 P.2d 1321 (1997).

The legislature's intent in enacting the Kansas Act is clearly expressed in K.S.A. 58-3501: The legislature enacted the Kansas Act to authorize state agencies to promulgate regulations that place Kansas in compliance with the requirements of the provisions of the Federal Act. Finding that K.S.A. 58-3502 pertains solely to displaced persons, rather than to any person who institutes and successfully litigates an inverse condemnation proceeding is inconsistent with the express purpose of the Kansas Act. In view of the expressed legislative intent to comply with the Federal Act, the limitation of litigation expenses in inverse condemnation proceedings to displaced persons in K.S.A. 58-3502 is unreasonable because under such a construction, Kansas would not be in compliance with the Federal Act.

Construing the entire Act in light of the expressed legislative purpose, the only reasonable construction of K.S.A. 58-3502 and K.S.A. 58-3506 is that the statutes authorize KDOT to promulgate regulations that provide for the payment of litigation expenses un-

der certain circumstances, without regard to whether the condemnee is displaced by the government taking.

K.A.R. 36-16-1 by reference to 49 C.F.R. § 24.107 clearly provides for an award of litigation expenses in inverse condemnation proceedings regardless of whether the condemnee is displaced. See K.A.R. 36-16-1; 49 C.F.R. § 24.107. Furthermore, KDOT admits liability for litigation costs in its brochures available to the general public on the subject of condemnation. In one of the brochures titled *Real Property Acquisition for Kansas Highways, Roads, Streets, and Bridges,* 1997, KDOT assures the public that the agency will reimburse the condemnee if the condemnee "initiate[s] an inverse condemnation action and the court agrees with [the condemnee] that the Agency has taken [the condemnee's] real property rights without the payment of just compensation, or the Agency elects to settle the case without further legal action."

In a brochure entitled *Right of Way Brochure for General Public when City or County Acquires Property for Federal-Aid Highway Project,* May 1990, KDOT explains:

"The Kansas Department of Transportation has given assurances to the Federal Highway Administration that acquisition in Kansas for Federal Aid Highway projects will be guided to the greatest extent possible by the Act and regulations. The purpose of this brochure is therefore an explanation to you of the procedures that guide the acquisition of property by a city or county."

In the brochure, KDOT outlines Title III of the Federal Act, stating: "Title III is to encourage and expedite acquisition by agreement, to avoid litigation, to assure consistent treatment for owners, and to promote public confidence in the many Federal and Federally assisted acquisition programs." Section 304 of Title III is summarized as a section providing "[r]eimbursement of property owner's court costs in certain, well-defined circumstances." The circumstances are set out in the brochure in the following manner:

"If any one of the three following conditions exist, the acquiring agency must reimburse you for your reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees which you have actually incurred. Such litigation expenses are reimbursable only under these conditions:

"1. if the acquiring agency starts a condemnation action, but the court decides that the agency does not have authority to acquire your property by condemnation, or

"2. if the acquiring agency starts a condemnation action and abandons it, or

"3. if you, as owner, successfully maintain an inverse condemnation proceeding. (Inverse condemnation is a legal process by which an owner brings suit against an agency to prove that the agency has taken compensable property rights without payment of just compensation.)"

The brochure concludes with the following statement:

"Title III deals ONLY with your rights and entitlements as a property owner. You may also be eligible for benefits under the Relocation Assistance Program created by Title II of the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970. If you, your personal property or business are required to be relocated, you will probably be eligible for relocation benefits. These benefits are fully explained in a brochure which is available through your local agency or by written request . . . ."

Based on the legislative intent clearly expressed in the Kansas Act, the district court erred in concluding that K.S.A. 58-3502 limits an award of litigation expenses to those cases where the condemnee is displaced by the government acquisition.

Reversed and remanded for the district court to determine litigation expenses to be awarded in inverse condemnation proceedings. An award for attorney fees and costs for appeal will be determined by this court.

DAVIS, J., not participating.

CHRISTEL E. MARQUARDT, J., assigned.[1]

[1] REPORTER'S NOTE: Judge Marquardt, Judge of the Kansas Court of Appeals, was appointed to hear case No. 83,175 vice Justice Davis pursuant to the authority vested in the Supreme Court by K.S.A. 20-3002(c).