Dr. Ramon Powers Executive Director Kansas State Historical Society 120 W. 10th Street Topeka, Kansas 66612
Dear Dr. Powers:
As Executive Director of the Kansas State Historical Society (KSHS) you ask the meaning of L. 2001, Ch. 113, which concerns State acquisition of the William Allen White House in Emporia.
You first ask how this bill relates to K.S.A. 75-2726, the statute which generally governs acquisition of historic property for the State by the KSHS. It provides that the State "shall not acquire or make a commitment to acquire" historic property unless it is first listed on the National Register of Historic Places. Once listed, a petition for acquisition shall be filed with the secretary (i.e. Executive Director), being signed "by at least 1,000 of the qualified electors of this state and at least 25% of the number of the electors signing the application shall be also qualified electors of the county where the historic property is located."[1]
After a petition is filed, the Historic Sites Review Board makes a study of the property and, based on standards set forth in the statute, makes a recommendation to the Governor and the Legislature.
By contrast, L. 2001, Ch. 113 provides in relevant part:
 "(a) The state historical society is authorized to accept and hold, in the name of the state, the William Allen White House. . . . Such real property and the improvements thereon shall be acquired in fee simple by gift, grant or designation for the purpose of establishing and maintaining it as a historical landmark and memorial. . . . The state historical society shall have the power to do any and all things necessary to carry out the intent and purpose of this act and to make such rules and regulations for the use, enjoyment and government of the premises as may be necessary.
 "(b) Conveyance of the property described in subsection (a) shall not be accepted by the executive director of the state historical society until the attorney general approves the deed and determines that such conveyance would convey such land in fee simple to the state of Kansas."
The specific question you ask is whether the KSHS may accept the William Allen White House without going through the petition process set forth in K.S.A. 75-2726.
Unless L. 2001, Ch. 113 was intended to provide a bypass for the petition process, it would have no meaning-K.S.A. 75-2726 already provided authority for the KSHS to acquire the William Allen White House through the petition process because it is listed on the National Register of Historic Places. "There is a presumption that the legislature does not intend to enact useless or meaningless legislation."[2]
Additionally, K.S.A. 75-2726 is an older statute that applies to historic property generally. L. 2001, Ch. 113 is a newer statute that is specific to the William Allen White House. "When two statutes conflict . . . the more specific, more recent statute controls."[3]
The inescapable conclusion is that L. 2001, Ch. 113 allows the KSHS to acquire the William Allen White House without going through the petition process set forth in K.S.A 75-2724.
Your other question is whether state funds can be used to operate or make improvements to the property. L. 2001, Ch. 113 goes on to provide:
 "(c) Moneys received by the state historical society from federal agencies or other federal sources for the William Allen White House shall be expended for restoring, equipping and otherwise preparing the William Allen White House for visitation by members of the public, including all interpretation and similar exhibit development, to the extent permitted by applicable federal requirements, guidelines and limitations.
 "(d) All expenditures by the state historical society for the operations or for any capital improvements for the William Allen White House shall be funded from moneys received from federal agencies, local governmental entities or private sources, including but not limited to fees and donations received from persons visiting the William Allen White House."
"All" means "the entire or total number, amount or quantity of."[4]
If the total amount of expenditures for operations or capital improvements must come from moneys received from federal agencies, local governmental entities or private sources, then no expenditures may be made from state funds.
This appears, in fact, to be precisely what the Legislature intended. As originally introduced in the Senate Committee on Ways and Means, passed by the Senate, and then introduced in the House Committee on Appropriations, the bill[5] did not contain subsections (c) and (d).
The original fiscal note to the bill listed "$700,000 in federal funds for FY 2001 and $217,467 from the State General Fund for FY 2002." The minutes of the House Committee on Appropriations public hearing on the bill record the following testimony:
 "Dr. Ramon Powers, Executive Director of the State Historical Society, explained the fiscal note which was written from information provided by the State Historical Society. In cases like these, the information provided is for optimum funding in the amount of $217,000 and which is based on the need for state funding for interpretation, including exhibit, educational programming, acquisition and conservation of artifacts, and promotional materials. This would be over and above the federal funding of $700,000 which would be used for the renovation and rehabilitation of the home. He informed the Committee of the three sites which are state-owned but they are operated with local level funds and manpower. If capital improvements are required, these are at the expense of the state. The three sites are the First Capitol, the John Brown `Adair' Cabin, and the Goodnow House."[6]
The next time the Committee considered the bill was when they worked it. They added in subsections (c) and (d). The fiscal note for this version of the bill, which was ultimately passed by both Houses, is an "impact of $700,000 in federal funds expenditures for FY 2001." Conspicuously absent is the $217,467 from the State General Fund for fiscal year 2002.
You ask about the implications of this; whether the KSHS may utilize existing staff to work on the property and furnishings or to catalog artifacts, prepare exhibits, etc. We believe the answer to this is affirmative. The salary expenses for existing staff are ones that would have been incurred anyway. It is also obvious that the KSHS could not administer the property or even implement the bill if staff was unable to do anything associated with it. We believe that the intent was that the costs of all materials for repairs, any labor not provided by existing KSHS staff, etc. must be funded by sources other than state funds.
You also inquire what could be done if there is an emergency and local funds are not quickly available for immediate repairs to preclude further damage. Such expenditures of state funds would be precluded by the legislation.
In conclusion, the Kansas State Historical Society (KSHS) is permitted by L. 2001, Ch. 113 to acquire the William Allen White House without going through the petition process set forth in K.S.A. 75-2726. The KSHS is not permitted to expend state funds to operate or make capital improvements on the property.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Steve Phillips Assistant Attorney General
CJS:JLM:SP:jm
[1] K.S.A. 75-2726(a).
[2] Bonanza, Inc. v. Carlson, 269 Kan. 705, Syl. ¶ 3 (2000).
[3] State ex rel. Tomasic v. Unified Government of WyandotteCounty/Kansas City, Kan., 264 Kan. 293, 303, 311 (1998).
[4] The American Heritage Dictionary, Second College Edition, 94 (1991).
[5] 2001 Senate Bill No. 309.
[6] Minutes, House Committee on Appropriations, March 19, 2001.