IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 114,850

ADAM PENER, as Personal Representative of
the Estate of ALEXANDER GOLD, and as
TRUSTEE of the ALEXANDER GOLD REVOCABLE TRUST DATED 01/26/1994,
*Appellants*,

v.

MICHAEL S. KING, SECRETARY OF TRANSPORTATION FOR THE STATE OF KANSAS,
*Appellee*.

SYLLABUS BY THE COURT

1.

Under the Eminent Domain Procedure Act, K.S.A. 26-501 *et seq.*, in a partial taking case there are only two issues: (a) the value of the entire property or interest immediately before the taking; and (b) the value of that portion of the land or interest remaining immediately after the taking.

2.

In ascertaining the amount of compensation and damage in an eminent domain or condemnation proceeding, the cost of new fences or loss of fences and the cost of replacing them with fences of like quality are not to be considered as separate items of damages but are to be considered only as they affect the total compensation and damage.

3.

In a condemnation proceeding, the award will not be disturbed on appeal from the district court as long as it is supported by substantial evidence.

1

4.

The verdict in a condemnation proceeding must be within the range of the opinion testimony admitted at trial.

5.

In a condemnation proceeding, the landowner's attorney fees are statutorily provided for in two instances. One occurs when the condemning authority abandons the proceedings after a court-appointed appraiser award. The other occurs when the condemning authority appeals a court-appointed appraiser award to the district court and the jury renders a verdict for the landowner that is greater than the appraiser award.

Appeal from Wyandotte District Court; R. WAYNE LAMPSON, judge. Opinion filed March 24, 2017. Affirmed.

*Todd H. Bartels*, of Polsinelli PC, of Kansas City, Missouri, argued the cause, and *Amy E. Morgan*, of the same firm, was with him on the briefs for appellants.

*Timothy P. Orrick*, of Orrick & Erskine, L.L.P., of Overland Park, argued the cause, and *Paul G. Schepers*, of the same firm, was with him on the brief for appellee.

The opinion of the court was delivered by

BILES, J.: This is an eminent domain proceeding initiated by the Kansas Department of Transportation for a highway improvement project. Adam Pener was the trustee and personal representative of the trust and estate that owned the condemned property at the time of the taking. He challenges the damages award entered by the district court after a bench trial, claiming the court gave insufficient weight to the replacement value for a fence and to a comparable sale when it calculated the property's

2

value. Pener also argues the district court should have awarded him attorney fees and expenses. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

The taking involved three tracts located in Wyandotte County that were owned by two entities for which Pener is the fiduciary—the Alexander Gold Revocable Trust dated 01/26/1994, and the estate of the late Alexander Gold. KDOT condemned permanent highway right of way easements covering 142,858 of these tracts' approximately 338,000 total square feet.

Before KDOT commenced the condemnation, it offered to buy the right of way for $104,930, but an agreement could not be reached. KDOT filed its petition under the Eminent Domain Procedure Act, K.S.A. 26-501 *et seq*. The district court appointed an appraisers' panel pursuant to the act, and the panel determined damages totaling $195,500. Unsatisfied, Pener invoked the landowners' statutory rights to trial in the district court. See K.S.A. 2016 Supp. 26-508(a). The parties tried the case to the court, rather than a jury.

Three witnesses testified about the property's value before and after the taking. The district court found the damages from the taking were $295,702. The court also denied Pener's claim for attorney fees and expenses.

Pener timely appealed. Jurisdiction is proper. K.S.A. 2016 Supp. 26-504 ("Appeals to the supreme court may be taken from any final order under the provisions of [the Eminent Domain Procedure Act].").

3

Pener argues the district court erred in calculating the damages award because it failed to include the replacement cost for a security fence that was part of the taking and because it gave insufficient consideration to a comparable sale. We reject both claims.

*The district court properly considered the cost to replace fencing.*

Some additional facts put this question into better perspective. During the negotiations leading up to the filing of the eminent domain action, KDOT represented that a separate offer of "[c]ompensation to cure any damages caused by the project, including fencing replacement" had been made to Shostak Iron and Metal Co., Inc., which was leasing the tracts. After the appraisers' panel entered its award, Shostak asked for apportionment. The district court ultimately dismissed Shostak's claims based on lease language in which it agreed not to share in any condemnation award.

At the bench trial, Pener testified new fencing was required on the tracts' new, post-taking property line. Based on an exhibit KDOT prepared for the appraisers' panel, in which KDOT represented its damage estimate included $65,720 to replace fencing, Pener believed the district court's damage award should include that additional amount. He claimed KDOT "stipulat[ed] to" this figure. Pener also said he believed the Shostak lease would require the existing fence to be replaced and that security was important to the property's use before its eventual redevelopment. Pener's expert witness testified he valued the property after the taking by reducing his appraisal an additional $70,000 to replace the fence, which he considered necessary.

KDOT's expert testified the fence taking resulted in only an $11,000 diminution in the value after the taking. Therefore, he believed it would be inappropriate to spend

4

$70,000 to replace the fence because that sum exceeded the contributory value of the fence section to the property as a whole, *i.e.*, $11,000. A KDOT staff attorney testified KDOT negotiated the "compensation for [the] cost to cure" with Shostak and had agreed to present the settled-upon $65,720 amount to the court-appointed appraisers. He did not believe he discussed the issue with Pener at the time. He acknowledged KDOT agreed at the administrative hearing to pay the $65,720 cost of replacing the fence by including the amount as an item in its appraisal.

After hearing this testimony, the district court found the "fence [was] not going to add $70,000 worth of value." Accordingly, it used KDOT's expert's approach and found the fence's taking resulted in an $11,000 diminution in the property's value.

On appeal, Pener argues the trial court should have included the entire $65,720 amount from KDOT's appraiser-panel exhibit in its damages award. This argument turns on Pener's reading of K.S.A. 26-513(d), the interpretation of which presents a question of law subject to de novo review. See *Hoesli v. Triplett, Inc.*, 303 Kan. 358, 362, 361 P.3d 504 (2015).

Under K.S.A. 26-513(b), "If the entire tract of land or interest in such land is taken, the measure of compensation is the fair market value of the property or interest at the time of the taking." But "[i]f only a part of a tract of land or interest is taken, the compensation and measure of damages is the difference between the fair market value of the entire property or interest immediately before the taking, and the value of that portion of the tract or interest remaining immediately after the taking." K.S.A. 26-513(c).

> "'Fair market value' means the amount in terms of money that a well informed buyer is
> justified in paying and a well informed seller is justified in accepting for property in an
> open and competitive market, assuming that the parties are acting without undue

5

compulsion. The fair market value shall be determined by use of the comparable sales, cost or capitalization of income appraisal methods or any combination of such methods." K.S.A. 26-513(e).

The statute further provides:

"In ascertaining the amount of compensation and damages, the following nonexclusive list of factors shall be considered if such factors are shown to exist. *Such factors are not to be considered as separate items of damages, but are to be considered only as they affect the total compensation and damage under the provisions of subsections (b) and (c) of this section*. Such factors are:

. . . .

"(8) Cost of new fences or loss of fences and the cost of replacing them with fences of like quality, to the extent that such loss affects the value of the property remaining." (Emphasis added.) K.S.A. 26-513(d)(8).

Relying on the italicized language, Pener argues the trial court erred by not including the entire $65,720 in its judgment, claiming "[a]warding [l]andowners a cost to cure for fence replacement was essential, given that [KDOT's] removal of this fixture . . . 'affect[ed] the value of the property remaining.'" But this argument misconstrues K.S.A. 26-513(d) and is contrary to our caselaw.

In *Rostine v. City of Hutchinson*, 219 Kan. 320, 323-24, 548 P.2d 756 (1976), this court held the italicized portion of the statute

"is a codification of the rule of law of this state which prohibits the use of the 'summation method' of valuation.

6

"The 'summation method' denotes a process of appraisal whereby each of several items that contribute to the value of real estate are valued separately and the total represents the market value thereof. Use of this method of appraisal has generally been rejected since it fails to relate the separate value of the improvements to the total market value of the property. . . . In contrast, the 'unit rule,' which is the generally accepted method of valuation, denotes a process of appraisal whereby the total value of real estate is first determined without placing a value on each of the separate contributing items. Consideration of the value of buildings and improvements is limited to the extent they enhance the value of the land taken. The same rule applies to machinery or other articles of personal property which have become affixed to the real estate. . . . In *Hoy v. Kansas Turnpike Authority*, 184 Kan. 70, 334 P.2d 315, we emphasized the requirement in this state that improvements be considered only to the extent they enhance the value of the whole property and not as separate items:

"'Improvements, such as here involved, located upon land which is condemned, are not to be valued separately but are part of the real estate and must be considered in determining the value of the land taken . . . .' [Citations omitted.]"

See also *Kansas City Mall Assocs. v. Unified Gov't of Wyandotte County/KCK*, 294 Kan. 1, 12, 272 P. 3d 600 (2012) (noting unit rule requires total value be determined and limits consideration of the value of buildings and improvements to the extent they enhance the value of the land taken) (citing *Creason v. Unified Gov't of Wyandotte County*, 272 Kan. 482, 485-86, 33 P.3d 850 [2001]).

Pener presented evidence of the fence's replacement value, including what he characterized as KDOT's admission as to that amount. KDOT's appraiser testified the loss of the fence diminished the parcel's post-taking value by only $11,000. When the district court adopted KDOT's view, it acted consistent with K.S.A. 26-513(d)'s admonition that replacement cost be considered to the extent it affected value rather than as a separate item of damages.

7

*The compensation award is supported by substantial evidence.*

Pener next argues the district court's judgment must be reversed because it failed to give sufficient consideration to a particular comparable sale among those discussed at trial. Three witnesses testified about the property's value before and after the taking.

Pener testified the combined value of the three tracts prior to the taking was $1,183,000, and their value after the taking was $613,500, leaving a difference of $569,500, although there were some minor discrepancies in his trial testimony. He arrived at these figures based on his opinion that the pre-taking value was about $3.50 per square foot because of the recent sale of a nearby property for $3.71 per square foot, which Pener refers to as "comparable sale one." And because Pener believed the smaller size of his remaining parcel after the taking reduced the field of potential purchasers, he calculated the post-taking value at $3.14 per square foot. He also added the fence's value, as discussed above, so his total damages were $635,059.

Pener's retained appraiser, Kenneth Jaggers, testified the property's highest and best use was assemblage of the tracts for heavy industry, and the most likely buyer would be a developer able to identify and secure a user. Based on his review of comparable sales—including "comparable sale one"—Jaggers concluded the property was worth $2 per square foot both before and after the taking. He testified two tracts had a combined market value prior to the taking of $585,300 and an after value of $318,600—a $266,700 difference, which included the fence replacement. Jaggers said the third tract's pre-taking value was $89,000 and $0 after—an $89,000 difference. His combined difference in pre- and post-taking value for all the tracts was $355,700.

8

KDOT's retained appraiser, Robert Marx, testified the property's highest and best use was redevelopment. But he also noted the improvements on the property should be used until someone came in with a redevelopment plan. He believed the property's value before the taking was $660,000 and $400,000 after.

In summary, the range the testimony established for the property's value immediately before and immediately after the taking was:

| Witness | Before value | After value | Difference |
|---------|--------------|-------------|------------|
| Pener | $1,183,000 | $613,500 | $569,500 |
| Jaggers | $674,300 | $318,600 | $355,700 |
| Marx | $660,000 | $400,000 | $260,000 |

The district court found the damages from the taking were $295,702. It determined the property's value prior to the taking was $742,150 and $446,448 after the taking. The court described its decision as "kind of . . . a [compromise] position" in which it "in large part adopt[ed] the approach that's set out by Mr. Marx."

Both sides correctly note the district court's valuation determinations are factual findings that are reviewed for substantial competent evidence, and we will apply that standard. In a condemnation proceeding, the award will not be disturbed on appeal from the district court as long as it is supported by "substantial evidence." See *Gault v. Board of County Commissioners*, 208 Kan. 578, 584, 493 P.2d 238 (1972) (rejecting unspecified challenges to verdict and "not[ing] briefly . . . the jury's verdict is supported by substantial evidence based upon present use of the [tract]"); *Diefenbach v. State Highway Commission*, 195 Kan. 445, 447, 407 P.2d 228 (1965) ("It is a universal rule of this court that if a verdict is supported by substantial evidence it will not be disturbed on appeal.").

9

The award must be supported by the testimony. See *Miller v. Glacier Development Co.*, 284 Kan. 476, 492, 161 P.3d 730 (2007).

In particular, the verdict in a condemnation proceeding must be within the range of the opinion testimony admitted at trial. *Mettee v. Kemp*, 236 Kan. 781, 787, 696 P.2d 947 (1985). The before value must not be more than the highest expression of opinion evidence and the after value must not be less than the lowest expression of opinion of the value of the property remaining after the taking. *City of Wichita v. May's Company Inc.*, 212 Kan. 153, 156, 510 P.2d 184 (1973). An award within the range offered by experts is supported by the evidence. See *Miller*, 284 Kan. at 493 (holding error admitting purchase price of property subject to condemnation proceeding was harmless because award was within range of values given by experts, so sufficient evidence other than purchase price supported jury's award).

The witnesses' opinions on value—not the comparable sales on which they rely—are the controlling consideration in determining whether the award is proper: "The fact that evidence is presented of comparable sales and of the various factors set forth in K.S.A. 26-513(d) [Ensley] does not authorize a jury to make a finding as to 'before' and 'after' values which is not within the range of the opinion evidence." *Mettee*, 236 Kan. at 789. Here, the district court's findings on the taking's "before" and "after" values were each within the testimony. The court found damages from the taking in the amount of the difference between those values.

Accordingly, the district court's findings were supported by substantial evidence and will not be disturbed on appeal. Pener's argument that the court did not give sufficient consideration to "comparable sale one" simply invites this court to improperly reweigh the evidence, which we cannot do. See *Peterson v. Ferrell*, 302 Kan. 99, 104, 349 P.3d 1269 (2015).

## THE DISTRICT COURT'S DENIAL OF ATTORNEY FEES

Pener next argues the district court erred when it denied his motion for attorney fees and expenses. He makes two arguments: (1) the court erred as a matter of law when it determined it lacked statutory authority to award attorney fees under K.A.R. 36-16-1 (2009); and (2) the court should have awarded fees and expenses under its inherent power to sanction KDOT for what Pener characterizes as the agency's bad-faith prelitigation conduct. Neither of these novel arguments has merit.

In condemnation proceedings, the landowner's attorney fees are statutorily provided for in only two instances. One occurs when the condemning authority abandons the proceedings after a court-appointed appraiser award. See K.S.A. 2016 Supp. 26-507(b). The other occurs when the condemning authority appeals a court-appointed appraiser award to the district court and the jury renders a verdict for the landowner that is greater than the appraiser award. See K.S.A. 26-509 ("Whenever the plaintiff condemner shall appeal the award of court appointed appraisers, and the jury renders a verdict for the landowners in an amount greater than said appraisers' award, the court may allow as court costs an amount to be paid to the landowner's attorney as attorney fees."). As KDOT points out, neither of these situations was present.

KDOT paid the appraisers' award into the court, and the landowners initiated the appeal. See *In re Central Kansas Electric Coop., Inc.*, 224 Kan. 308, 319, 582 P.2d 228 (1978) (trial court erred by allowing attorney fees to landowners who had "originally been appealing parties" when both parties appealed, but landowners dropped their appeal just before trial in apparent attempt to put themselves in a position to request attorney fees). We have neither an abandonment of the condemnation nor an appeal by KDOT from the court-appointed appraisers' award.

11

*K.A.R. 36-16-1 does not authorize attorney fees and expenses in this case.*

Pener asserts his fees are recoverable under K.A.R. 36-16-1, which implements state law authorizing compliance with the federal Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. § 4601 (2012) *et seq*., (the URA). K.A.R. 36-16-1 provides: "The provisions of 49 C.F.R. Part 24 . . . shall be applicable to all acquisitions of real property by the department of transportation for the state highway system including those acquisitions in which federal funds are not available for or used in payment of acquisitions." To implement the URA, the United States Department of Transportation promulgated 49 C.F.R. Part 24. See 49 C.F.R. § 24.1 (2015). The reference in K.A.R. 36-16-1 to Part 24 encompasses 49 C.F.R. § 24.107 (2015), which concerns litigation expenses and provides:

"The owner of the real property shall be reimbursed for any reasonable expenses, including reasonable attorney, appraisal, and engineering fees, which the owner actually incurred because of a condemnation proceeding, if:

"(a) The final judgment of the court is that the Agency cannot acquire the real property by condemnation;

"(b) The condemnation proceeding is abandoned by the Agency other than under an agreed-upon settlement; or

"(c) The court having jurisdiction renders a judgment in favor of the owner in an inverse condemnation proceeding or the Agency effects a settlement of such proceeding."

Pener contends the phrase "all acquisitions" in the state regulation "mandates the broadest possible application" and "extends the obligation to reimburse litigation expenses beyond inverse condemnation cases to 'all acquisitions of real property.'" He

12

points to (1) the absence of the words "inverse condemnation" in 42 U.S.C. § 4654(c) (2012), the URA provision addressing litigation expenses; and (2) the court's holding in *Bonanza, Inc. v. Carlson*, 269 Kan. 705, Syl. ¶ 5, 9 P.3d 541 (2000), stating that the language in the regulation provided for litigation expenses even when the landowner is not displaced.

This argument involves the interpretation of statutes and administrative regulations, which present questions of law subject to de novo review. See *May v. Cline*, 304 Kan. 671, 675, 372 P.3d 1242 (2016) (interpretation of administrative regulation is question of law and no deference is given to agency's interpretation); 269 Kan. at 707 (applying de novo review to landowner's claim that state and federal statutes and administrative regulations authorized award of attorney fees in inverse condemnation action). As with statutes, the court must give effect to the intent expressed by the plain and unambiguous language in the regulation. See *Ussery v. Kansas Dept. of SRS*, 258 Kan. 187, 194, 899 P.2d 461 (1995). K.A.R. 36-16-1 specifically makes "[t]he provisions" of 49 C.F.R. Part 24 applicable to "all acquisitions of real property . . . ."

The C.F.R. provisions plainly require the reimbursement of attorney fees only when a taking is abandoned or in inverse condemnation cases. Pener's argument for an expansive interpretation that universally covers "all acquisitions" would obliterate the limiting provisions in the C.F.R. Moreover, K.A.R. 36-16-1 applies to an administrative claims process, not eminent domain litigation under K.S.A. 26-501 *et seq*. Pener's argument is without merit.

Pener's reliance on *Bonanza* is equally misplaced. In *Bonanza*, KDOT condemned the landowners' property for a federally-assisted state project but failed to pay the condemnation award within the time provided by statute. Landowners sued, claiming this failure constituted abandonment of the condemnation proceedings and sought to recover

13

damages for KDOT's use of their property and for litigation expenses, including attorney fees. The district court declined to award fees because the landowners were not displaced by the project. KDOT defended that ruling on appeal by arguing, among other things, that K.S.A. 58-3502—part of the Kansas statutory scheme authorizing compliance with the URA's expense-reimbursement provisions—applies only to displaced persons.

The *Bonanza* court suggested the plain language of K.S.A. 58-3502 (Furse 1994) authorized litigation expenses to be reimbursed only when the condemnee is displaced. 269 Kan. at 718-19. But, it reasoned, the legislature intended for the State to be in compliance with the URA, which does not make reimbursement for those expenses contingent on the condemnee's displacement. 269 Kan. at 719. Accordingly, "the limitation of litigation expenses in inverse condemnation proceedings to displaced persons in K.S.A. 58-3502 is unreasonable because under such a construction, Kansas would not be in compliance with the Federal Act." 269 Kan. at 719. It further held "[c]onstruing the entire Act in light of the expressed legislative purpose, the only reasonable construction of [the state act] is that the statutes authorize KDOT to promulgate regulations that provide for the payment of litigation expenses under certain circumstances, without regard to whether the condemnee is displaced by the government taking." 269 Kan. at 719-20.

*Bonanza*'s rationale simply does not apply because the interpretation of K.A.R. 36-16-1 Pener advocates for is not necessary to bring the State into compliance with the URA, which authorizes attorney fee awards only in abandoned takings and inverse condemnation cases. See 42 U.S.C. § 4654(a), (c); see also 49 C.F.R. § 24.107.

K.A.R. 36-16-1 does not authorize an award of attorney fees under the circumstances of this case.

14

*The district court correctly denied attorney fees under its inherent authority.*

Finally, Pener argues the district court should have awarded fees under its inherent power to do so for what Pener characterizes as KDOT's bad-faith conduct: (1) making a "low-ball" offer prior to litigation without providing an appraisal with it; (2) basing the prelitigation offer on an appraisal that did not comply with accepted appraisal practices; (3) failing to respond to Pener's attempts to negotiate a proper valuation amount; and (4) failing to timely update its initial appraisal after receiving Pener's response to its initial offer. Notably, these allegations all concern behavior prior to KDOT initiating the condemnation.

Pener does not cite any authority regarding the scope of a court's inherent power to sanction prelitigation bad-faith conduct. Pener refers to *Alpha Med. Clinic v. Anderson*, 280 Kan. 903, 926, 128 P.3d 364 (2006), but that case simply considered whether the court should impose sanctions for misconduct during an appeal: violating the court's order sealing the record on appeal by attaching portions of the record to an appellate brief and openly discussing the brief and attachments at a press conference. This case is simply not pertinent to the argument Pener advances.

There is caselaw supporting the proposition that a trial court possesses inherent powers to sanction when "'reasonably necessary for the administration of justice, provided these powers in no way contravene or are inconsistent with substantive statutory law.'" *Comprehensive Health of Planned Parenthood v. Kline*, 287 Kan. 372, 419-20, 197 P.3d 370 (2008) (quoting *Wilson v. American Fidelity Ins. Co.*, 229 Kan. 416, 421, 625 P.2d 1117 [1981]). The caselaw also supports the proposition that a court's sanction powers may extend to conduct outside the litigation, including "'as a means of enforcing obedience to a law which the court is called on to administer.'" *Kline*, 287 Kan. at 429 (Davis, J., concurring) (quoting *Wilson*, 229 Kan. at 421).

15

But we need not engage in a lengthy discussion on the extent of these powers in this case. Even if the court could have awarded Pener the sanctions he requested on some other set of facts, it could not have done so on these facts. In denying Pener's motion for fees and expenses, the district court commented it would "probably" find KDOT did not act in bad-faith and later said it did not find "those special circumstances exist in this case to justify deviation" from the general rule that attorney fees and expenses are only awarded under specific statutory circumstances, *i.e.*, abandoned takings, inverse condemnation cases, and when the condemning authority loses after appealing the court-appointed appraisers award. In other words, nothing in the record suggests sanctions were necessary to compel KDOT's obedience to any applicable law or that this was otherwise an exceptional case in which KDOT intended to utilize the condemnation process to harass, delay, or achieve other improper ends.

Indeed, the opposite conclusion is more readily apparent. The district court characterized the course of this condemnation as a typical example of how the statutory condemnation process works. After KDOT filed its petition, the district court found the takings were necessary to KDOT's lawful purposes. KDOT abided by the litigation timeline it set out in its offer letter:  It needed to acquire the property by September 1 and would proceed to bring a condemnation action if its offer was not accepted. In addition, KDOT supplied evidence tending to disprove Pener's claim it relied on improper appraisal methodologies to present a "low-ball" offer. These facts would not support an award of attorney fees and expenses. The district court did not err in denying the motion.

Affirmed.

ROSEN, J., not participating.

16

MICHAEL J. MALONE, Senior Judge, assigned.[1]

---

[1]**REPORTER'S NOTE:**  Senior Judge Malone was appointed to hear case No. 114,850 vice Justice Rosen under the authority vested in the Supreme Court by K.S.A. 20-2616.